IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| JAMES E. RADICAN | ) | CIVIL ACTION |
| | ) | CASE NO.: 00-624-CIV-ZLOCH |
| Plaintiff, | ) | MAGISTRATE: Seltzer |
| | ) | |
| v | ) | |
| | ) | |
| RELIANCE STANDARD LIFE | ) | |
| INSURANCE COMPANY, a foreign | ) | |
| corporation. | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION
### FOR SUMMARY JUDGMENT ON THE ISSUE OF LIABILITY
### AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

Defendant, Reliance Standard Life Insurance Company ("RSL"), by and through its undersigned attorneys, hereby files its response to plaintiff, James E. Radican's ("Plaintiff") motion for summary judgment on the issue of liability and cross-moves for a summary judgment in its favor and against plaintiff and in support thereof states as follows:

### RSL'S RESPONSE TO PLAINTIFF'S
### CONCISE STATEMENT OF UNDISPUTED FACTS

Pursuant to S.D.Fla.L.R. 7.5, RSL disputes the following facts contained in the following paragraphs of plaintiff's concise statement of undisputed facts: paragraphs 2,4,5,9,12,13,16,17,18,19. RSL responds to each of these factual contentions more fully below. RSL further moves for summary judgment in its favor based upon other pertinent undisputed facts in the record, as set forth immediately below.



## CONCISE STATEMENT OF UNDISPUTED FACTS

1       RSL issued to Tarmac America, Inc. ("Tarmac") a group long term disability plan under policy number LSC 098842, with an effective date of January 1, 1996. A copy of the subject policy is attached to plaintiff's motion for summary judgment as Exhibit "A."

2       Under the terms of the plan, the effective date of individual insurance under the plan commences when a person becomes an "active, full-time employee." *See* plaintiff's motion for summary judgment, Exhibit "A" at page 1.0.

3       The plan further defines "Full-time" as "working for (Tarmac) for a minimum of 40 hours during a person's regular work week. *See* plaintiff's motion for summary judgment, Exhibit "A" at page 2.0.

4       On October 3, 1995, plaintiff underwent decompressive laminectomy surgery due to a herniated disc in his spine.

5       The subject policy went into effect after plaintiff's surgery. *See* plaintiff's motion for summary judgment, Exhibit "A."

6.      On a claim form submitted by plaintiff to RSL, plaintiff stated that on the last day that he worked before the alleged onset of disability, he was working part-time and "recovering from surgery."

7.      During two telephone conversations with James Wilson, Jr., of RSL, plaintiff stated that he had worked part-time for approximately one year before the alleged onset of disability. *See* Affidavit of James Wilson, Jr., a copy of which is attached hereto as Exhibit "1"; *See also* plaintiff's motion for summary judgment, Exhibit "D," at page 3.

8.      During its investigation of the claim, RSL received a letter dated February 4, 1998 from Michael Unger who stated that the employer "allowed [plaintiff] to work on a

part-time basis, and continued to work on a part-time basis for over one year while receiving physical therapy and pain treatments." *See* plaintiff's motion for summary judgment, Exhibit "C."

9. Mr. Unger's letter further states that "Tarmac's policy requires employees to work on a full-time basis. Jim [plaintiff] was incapable of performing his duties on this basis and was required to file for short-term disability..." *See* plaintiff's motion for summary judgment, Exhibit "C."

10. After the claim was denied, Mr. Unger submitted an affidavit in which he attempted to "correct" the statements in this earlier letter. See plaintiff's motion for summary judgment, Exhibit "C."

11. During its investigation of plaintiff's claim, RSL received a letter dated February 26, 1998 from B. Edward Pittman, Vice President of Human Resources for Tarmac, in which he states that Mr. Radican was "paid full salary and enjoyed full benefits" but "that he worked partial days in 1996." See plaintiff's motion for summary judgment, Exhibit "C."

12. In a letter dated January 1, 1996, plaintiff's treating physician, Manual Porth, M.D. states that "Mr. Radican has been advised to remain out of work for the next 6 months for medical reasons." The doctor hoped that plaintiff could return to work by June, 1996. *See* plaintiff's motion for summary judgment, Exhibit "D," at page 6.

13. On March 22, 1996, Dr. Porth states in his records that plaintiff's "quality of life has not significantly improved. He is still unable to return to his job and is aware of his back on a continual basis." *See* plaintiff's motion for summary judgment, Exhibit "D," at page 6.

14. On September 16, 1996, Dr. Porth's medical records state that "the patient continues to be symptomatic and is unable to return to work." See plaintiff's motion for summary judgment, Exhibit "D," at page 7.

15. In a letter dated September 16, 1996, Dr. Porth states that following the surgery, plaintiff had "essentially no improvement for severe degenerative disease and spinal stenosis. He has had an attempt at multiple epidural blocks and physical therapy with no improvement." The doctor further states that "[a]t this point the patient is found totally disabled with respect to employment and is advised to remain out of work until further notice." See plaintiff's motion for summary judgment, Exhibit "D," at page 7.

16. Under the terms of the plan, employees were not required to contribute to the payment of premiums for coverage. See plaintiff's motion for summary judgment, Exhibit "A," at page 1.1.

17. RSL serves as the claims review fiduciary with respect to the plan. See plaintiff's motion for summary judgment, Exhibit "A," at page 4.0.

18. The plan documents further state that as claims review fiduciary, RSL "has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits." See plaintiff's motion for summary judgment, Exhibit "A," at page 4.0.

## ARGUMENT AND LEGAL AUTHORITY

### 1.    Summary Judgment Procedure

Plaintiff has correctly set forth the law applicable to motions for summary judgment. Defendant disputes, however that plaintiff is entitled to summary judgment in his favor. On the contrary, for the reasons discussed below, plaintiff's summary judgment motion must

be denied. Moreover, based on the applicable law, defendant is entitled to summary judgment in its favor.

## 2.   **Standard of Review**

Plaintiff devotes several pages in his brief to the argument that the language in defendant's insuring clause, requiring a claimant to submit "satisfactory proof of Total Disability to [RSL]," does not grant discretionary authority. While RSL disputes this position, it is one that the court need not even address. Elsewhere the policy contains a clear and unequivocal grant of discretionary authority to RSL. On page 4.0 of the policy, it states as follows:

> Reliance Standard Insurance Company shall serve as the claims review fiduciary with respect to the insurance policy and the Plan. <u>The claims review fiduciary has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits.</u> Decisions by the claims review fiduciary shall be complete, final and binding on all parties.

See plaintiff's motion for summary judgment. Exhibit "A," at page 4.0 (emphasis added).

Apparently, counsel for plaintiff overlooked the above-quoted language in the policy. Nevertheless, this language contains a clear grant of discretionary authority for defendant to interpret the terms of the plan and make decisions on eligibility. Where, as in this case, the party making decisions on eligibility is granted discretionary authority, the deferential arbitrary and capricious standard of review is applied to its decisions. *See Firestone Tire and Rubber Company v. Bruch*, 489 U.S. 101, 109 S.Ct. 948 (989); *Buckley v. Metropolitan Life Insurance Company*. 115 F.3d 936, 939 (11th Cir. 1999). Under this deferential standard of review, the fiduciary's decision must be affirmed if it is reasonable, even if the

court would have come to a different conclusion independently. *Ellis v. Metropolitan Life Insurance Company*, 126 F.3d 228, 232 (4th Cir. 1997).

RSL anticipates that plaintiff will argue in a reply brief that the heightened arbitrary and capricious standard should be applied since RSL is responsible for making decisions on claims and is also responsible for paying benefits. *See Brown v. Blue Cross and Blue Shield of Alabama, Inc.*, 898 F.2d 1556 (11th Cir. 1990). For the reasons discussed below, RSL's decision to deny the claim should be affirmed by this court under the first prong of the applicable tests because its decision is legally correct. Moreover, the denial of this claim promotes the interest of all plan participants because it guarantees that only eligible individuals may recover benefits thus maintaining the premiums at an affordable level. *See* RSL's Exhibit "1." Therefore, defendant's decision is entitled to the utmost deference.

No matter what standard of review is applied, the district court is limited to reviewing only those facts known to the plan at the time the decision on the claim was made. *Buckley*, 115 F.3d at 941; *Shannon v. Jack Eckerd Corp.*, 113 F.3d 208 (11th Cir. 1997). In support of his summary judgment motion, plaintiff relies at least in part on materials that were not before RSL at the time the claim was reviewed. Based on the applicable law, those materials should not be considered by the court.

### a.    Plaintiff Was Not An Eligible Insured Under the Plan.

The subject plan sets forth specific eligibility requirements as identified by plaintiff on pages 11 and 12 of his brief. *See also* plaintiff's motion for summary judgment, Exhibit "A," at pages 1.0 and 2.0. As stated in the plan, the effective date of individual coverage commences when premiums are paid and an individual meets the eligibility requirements. *See* plaintiff's motion for summary judgment, Exhibit "A," at page 5.0. To be in an eligible

class, a person must be an "active, Full-time employee." See plaintiff's motion for summary judgment, Exhibit "A," at page 1.0. The policy defines "Full-time" as "working for [Tarmac] for a minimum of 40 hours during a person's regular work week." See plaintiff's motion for summary judgment, Exhibit "A," at page 2.0.

Plaintiff first suggests that the term "Full-time" is ambiguous. In support of this argument, plaintiff states that defendant "misinterpreted" the definition to require an individual to work 40 hours per week "at all times." See plaintiff's motion for summary judgment at page 12. RSL has never maintained this position. The claim was denied because RSL did not receive adequate evidence that plaintiff worked 40 hours per week at any time while the policy was in effect. More importantly, there is no basis for such argument because the policy contains a straight-forward definition of that term.

Plaintiff essentially argues that he was a full-time employee because his employer classified him as such, paid him a full salary and granted to him full benefits. See plaintiff's motion for summary judgment at page 13. This argument ignores the definition of "Full-time" stated in the policy which requires an employee to work a minimum of 40 hours per week. The courts are required to enforce the terms of ERISA plans as written. *Katz v. Comprehensive Plan of Group Ins.*, 197 F.3d 1084 (11th Cir. 1999); *Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1515 (10th Cir. 1996); *Jensen v. Sipco, Inc.*, 38 F.3d 945, 949 (8th Cir. 1994). Because plaintiff's requested definition of "Full-time" is contrary to the terms of the plan, it must be rejected.

It is simply irrelevant that in 1996, plaintiff was paid and received benefits as a full-time employee of Tarmac. It is also irrelevant to the issue of coverage that RSL accepted premiums. See plaintiff's motion for summary judgment at page 14. The subject plan is

self-administered. Accordingly, all of the enrollment functions are carried out by the employer. Under the "RECORDS MAINTAINED" section of the policy, the employer must provide to RSL "essential data of the insurance, including new persons, terminations, changes, etc." See plaintiff's motion for summary judgment, Exhibit "A," at page 3.0. The policy further requires Tarmac to provide this information "regularly."

Pursuant to this provision in the policy, RSL relies on the information provided by the policyholder. RSL had no way of knowing that plaintiff was not working full-time in 1996. Since the term "Full-time" is not ambiguous, plaintiff does not have a valid estoppel claim. See Katz, supra (holding that estoppel under ERISA only applies to the interpretation of ambiguous plan terms). Additionally, there was no valid waiver of the eligibility requirements. See plaintiff's motion for summary judgment, Exhibit "A," at page 3.0, "CHANGES." See also Sippel v. Reliance Standard Life Insurance Company, 128 F.3d 1261 (8th Cir. 1997)(holding that mere acceptance of premiums cannot provide a basis for coverage that otherwise does not exist).

None of the information provided to RSL during its initial investigation supported plaintiff's claim of eligibility. As noted above, on the initial claim form, plaintiff stated that on his last day of work, he was working part-time and "recovering from surgery." See plaintiff's motion for summary judgment, Exhibit "D," at page 3. During two telephone conversations with RSL, plaintiff stated that he worked part-time for approximately one year before he stopped working because his employer could no longer accommodate his part-time schedule. See RSL's Exhibit "1." At no time during these telephone conversations did plaintiff state that he had ever returned to work full-time after his surgery.

Information provided by the employer also supports RSL's decision. B. Edward Pittman, Vice President of Human Resources for Tarmac wrote to RSL on February 26, 1998. *See* plaintiff's motion for summary judgment, Exhibit "C." In the letter, Mr. Pittman states that plaintiff "worked partial days in 1996 following his return to work from surgery." *See* plaintiff's motion for summary judgment, Exhibit "C." Certainly, this comment supports RSL's position. Mr. Pittman argued, however, that plaintiff should be entitled to benefits because he was considered a full-time employee by Tarmac. For the reasons stated above, this view is unacceptable because it is contrary to the express terms of the plan.

RSL also received a letter from Michael Unger, General Manager of a company affiliated with Tarmac. In the February 4, 1998 letter, Mr. Unger states that at the time plaintiff returned to work after surgery he was "allowed...to work on a part-time basis and continued to work on a part-time basis for over one year while receiving physical therapy and pain treatment." *See* plaintiff's motion for summary judgment, Exhibit "C." The letter further states plaintiff was "incapable of performing his duties on a full-time basis." *See* plaintiff's motion for summary judgment, Exhibit "C." Thus, all of the information received by RSL showed that plaintiff was working part-time at all times relevant to the claim.

The medical records submitted to RSL also did not support plaintiff's claim that he worked full-time at any point during 1996. See plaintiff's motion for summary judgment, Exhibit "D." Plaintiff's treating physician, Dr. Manuel Porth states on January 1, 1996 that plaintiff was "advised to remain out of work for the next 6 months for medical reasons." The doctor did not state, however, that plaintiff would definitely be able to return at that time.

Later records from Dr. Porth confirmed that plaintiff was having physical problems after his surgery. On March 22, 1996, Dr. Porth noted that plaintiff's condition "has not significantly improved." Dr. Porth further states that plaintiff "is still unable to return to this job." *See* plaintiff's motion for summary judgment, Exhibit "D."

Two documents from Dr. Porth dated September 16, 1996 demonstrate that plaintiff was still limited in his ability to work. Dr. Porth's medical records for that date state that "in spite of continued therapy, epidural blocks, analgesic medications, the use of physical therapy and corset immobilization, the patient continues to be symptomatic and is <u>unable to return to work</u>." See plaintiff's motion for summary judgment, Exhibit "D." In a letter dated September 16, 1996, Dr. Porth repeats that plaintiff had "essentially no improvement" in his condition. Moreover, the doctor stated that plaintiff "is found totally disabled with respect to employment and is advised to remain out of work until further notice."

The records described above provide more than a reasonable basis for RSL's decision. These records establish that plaintiff did not work full-time as defined by the policy as consisting of working a minimum of 40 hours per week, at any time after the policy went into effect. Therefore, RSL's decision was correct and should be affirmed by this court.

Realizing the effect of the responses on his claim, plaintiff attempted to rescind and revise nearly all of the statements that he made to RSL as well as the statements made by Tarmac. For example, in an affidavit that was subsequently provided to RSL, plaintiff stated that he did not actually mean that he worked part-time throughout 1996 as previously stated. Plaintiff now claims that he only worked part-time in 1996 during those

weeks that he received physical therapy and/or pain treatment, which numbered less than 12. This statement is flatly contradicted by the medical records mentioned above. As of March 22, 1995, Dr. Porth stated that plaintiff was still unable to return to his job. This time frame alone spans 12 weeks. Moreover, Dr. Porth's September 16, 1996 letter declared plaintiff totally disabled and the doctor advised plaintiff to stay out of work. Accordingly, plaintiff was either out of work or working part-time a great deal more than the 12 weeks he claimed.

At the request of plaintiff, Mr. Unger provided RSL with an affidavit in which he too claimed that his earlier statements were inaccurate. See plaintiff's motion for summary judgment, Exhibit "C." In his affidavit, Mr. Unger stated that plaintiff worked only part-time in 1996. It is hard to imagine how else his words can be interpreted. Mr. Unger earlier stated that plaintiff was allowed to return to work "on a part-time basis and continued to work on a part-time basis for over one year while receiving physical therapy and pain treatment." He also stated that plaintiff was "incapable of performing his duties" on a full-time basis. Once again, these words clearly reflect a lack of full-time employment by plaintiff. It was not until after the claim was denied that Mr. Unger sought to "clarify" his statements.

Plaintiff offers no response to the letter from Mr. Pittman which states that he worked "partial days in 1996 following his return to work from surgery." With respect to the comments of Ms. Fischer, plaintiff simply argues that Ms. Fischer did not state that plaintiff did not work full-time in 1996 and that her office is located in Virginia rather than Florida where he worked. These arguments lack merit.

Plaintiff's response to Dr. Porth's records can be dispatched quickly. Plaintiff relies on an affidavit that was prepared on April 17, 2000 in an attempt to counter the statements of Dr. Porth. This affidavit was not before RSL at the time the decisions were made on the claim. Therefore, it may not be considered by the court. *See Buckley, supra; Shannon, supra.*

Plaintiff also relies on affidavits from some co-workers in support of his claim that he worked full-time in 1996. See plaintiff's motion for summary judgment, Exhibit "C." These affidavits are of little value. Both of the co-workers state that they worked with plaintiff "throughout 1996." This information is obviously false based on the medical records described above. Moreover, the affidavits fail to explain what if any job duties were observed, where plaintiff was working and any specific dates when this took place. It should be noted that plaintiff's job involved extensive travel, therefore, one has to question where these individuals allegedly saw plaintiff work.

Significantly, plaintiff's brief contains a statement which confirms his ineligibility for benefits. On page 17 of his brief, plaintiff states that "there was no way for plaintiff to establish his eligibility for benefits, because he was a salaried and not an hourly employee." "A plaintiff suing under [Section 502(a)(1)(b) of ERISA] bears the burden of proving his entitlement to contractual benefits." *Horton v. Reliance Life Insurance Company*, 141 F.3d 1038, 1941 (11th Cir, 1998). Plaintiff's statement is a concession that he failed to meet his burden.[1]

---

[1] Moreover, defendant disputes that an employee who works in a capacity similar to plaintiff can not establish eligibility for benefits. Either plaintiff, his employer or his co-workers could have identified specific projects that Mr. Radican performed along with dates that he was observed working full-time. They failed to do so, however.

Finally, plaintiff argues that defendant failed to comply with ERISA's disclosure requirements. See brief of plaintiff at pages 19-20. This argument of plaintiff is equally without merit. As stated by plaintiff, the ERISA regulations require a plan to provide a participant with the specific reasons for the denial as well as a description of the information needed to perfect the claim. See 29 C.F.R. §2560-503-1. This regulation applies to § 503 of ERISA which requires employee benefit plans to provide participants with "a full and fair review" of the claim. See 29 U.S.C. §1133.

Plaintiff can not dispute that he had a full and fair review of his claim. The ERISA regulations only require a plan to review a denied claim one time. In this case, RSL accepted evidence from plaintiff after the appeal was denied and reviewed the claim in detail for a third time. On this basis alone, plaintiff can not complain that he was not affirmed a full and fair review.

Mr. Radican claims that RSL should have notified him of certain items that were identified in the final denial letter of RSL so that he could respond to them. The ERISA statute and regulations do not require a plan to identify every piece of information it has reviewed in evaluating a claim. A plan fiduciary is in substantial compliance and has not violated the regulations so long as the participant is advised of his appeal rights and the information needed to perfect the claim for review. Tolle v. Carroll Touch, Inc., 23 F.3d 174, (7th Cir. 1994); Davidson v. Prudential Insurance Company of America, 953 F.2d 1093 (8th Cir. 1992).

In this case, plaintiff knew that his claim was denied because he did not work full-time after the policy went into effect. Plaintiff was provided with multiple opportunities to provide evidence to RSL that he worked full-time, but failed to do so. Plaintiff's failure to

provide adequate information to RSL had nothing to do with the claim review procedures. It was based entirely on the lack of a valid claim for benefits.

## CONCLUSION

For the reasons stated above, plaintiff's summary judgment motion must be denied. Contrary to plaintiff's argument, the subject plan grants to RSL the discretionary authority to determine eligibility for benefits. To be eligible for benefits under this plan, an individual must be a full-time employee of the policyholder, working a minimum of 40 hours per week. Plaintiff failed to provide RSL with proof that he met this requirement. Therefore, RSL's decision to deny the claim should be affirmed. This court should deny plaintiff's summary judgment motion and enter summary judgment in favor of RSL and against plaintiff on RSL's cross motion for summary judgment.

> RAWLE & HENDERSON
> Joshua Bachrach, Esquire (*pro hac vice*)
> Co-counsel for Reliance Standard Life
> The Widener Building, 16th Floor
> One South Penn Square
> 1339 Chestnut Street
> Philadelphia, PA 19107
> (215)575-4200
>
> ALLEY, MAASS, ROGERS & LINDSAY, P.A.
> Co-counsel for Reliance Standard Life
> P.O. Box 431
> 321 Royal Poinciana Plaza, South
> Palm Beach, FL 33480-0431
> (561) 659-1770/ (561) 833-2261 Fax
>
> By:_____
>   GENE D. LIPSCHER
>   Florida Bar No. 904228:

## AFFIDAVIT OF JAMES A. WILSON, JR.

I, James A. Wilson, Jr., being duly sworn according to law, depose and state as follows:

1. I am employed by Reliance Standard Life Insurance Company in the Group Long Term Disability Claims Department.

2. I was involved in the investigation of Mr. Radican's claim for benefits under Policy No. LSC 98842.

3. I spoke directly with Mr. Radican on the telephone on two occasions during the investigation of his claim for benefits.

4. During both telephone conversations Mr. Radican told me that he worked part-time for approximately one year before he was told by the employer, Tarmac, that they could not accommodate his part-time schedule after December 31, 1996.

5. At no time during my telephone conversations with Mr. Radican did he ever state that he worked full-time at any time during 1996.

6. On the disability claim form completed by Mr. Radican he stated that he was working part-time, recovering from surgery, prior to claiming disability on January 1, 1997.

7. My decision to deny the claim was based solely on the evidence in the administrative record.

8. I am not compensated in any manner based on the number of claims that I deny.

0408127.01



9. Denial of this claim promotes the interests of the plan because it ensures that only qualified individuals receive benefits, thus maintaining the premiums at an affordable level for the policy holder.

```
COMMONWEALTH OF PENNSYLVANIA)
                             ) ss:
COUNTY OF PHILADELPHIA       )
```

Date: 6/5/2000

James A. Wilson, Jr.

Notarial Seal
Marie Czarkowski, Notary Public
Philadelphia, Philadelphia County
My Commission Expires June 1, 2002

Member, Pennsylvania Association of Notaries

0408127.01