UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
6024
Case No. 00-624-CIV-ZLOCH-Seltzer

JAMES E. RADICAN )
)
Plaintiff, )
)
vs. )
)
RELIANCE STANDARD LIFE )
INSURANCE COMPANY, a Foreign, )
corporation, )
)
Defendants. )
_____ )

**NIGHT BOX
FILED**

**JUN 2 3 2000**

CLARENCE MADDOX
CLERK, USDC / SDFL / FTL!

### PLAINTIFF'S RESPONSE TO DEFENDANT'S
### CROSS MOTION FOR SUMMARY JUDGMENT
### AND SUPPORTING MEMORANDUM OF LAW

COMES NOW Plaintiff, JAMES E. RADICAN, by and through his undersigned

counsel and, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 7.5,

files this Response to Defendant's Cross Motion for Summary Judgment and states:

### RE: DEFENDANT'S CONCISE
### STATEMENT OF UNDISPUTED FACTS

In its "Concise Statement of Undisputed Facts" in its Cross Motion for Summary

Judgment, RSL has made statements which plaintiff disputes because they are either false,

incomplete, or misleading. Each disputed statement with explanation follows:

RSL states in paragraph 6:

1

6.  On a claim form submitted by plaintiff to RSL, plaintiff
    stated that on the last day that he worked before the
    alleged onset of disability, he was working part-time and
    "recovering from surgery."

Radican did not state on the claim form that he was "working" part-time. The actual

questions and answers from the claim form RSL cited in its final denial letter ( Exhibit "D"

to plaintiff's motion for summary judgment) are as follows:

Before you stopped working, did your condition require
you to change your job or the way you did your job?
His answer:
    Yes
    Date you were first unable to work on a full-time basis
His answer:
    1/1/97
Next he was asked:
    Last day you worked before the disability:
His answer:
    12/31/96
Finally, he was asked:
    Did you work a full day:
His answer:
    No - Part time - recovering from surgery

Radican's statement is that he worked part-time on a specific day, December 31, 1996.

Further, RSL fails to mention that in response to the question as to the date he was <u>first</u>

unable to work on a full-time basis, Radican's response is January 1, 1997.

RSL states in  paragraph 7:

7.  During two telephone conversations with James Wilson,
    Jr., of RSL, plaintiff stated that he had worked part-time
    for approximately one year before the alleged onset of
    disability. (Citations omitted).

2

James Wilson, Jr., the person who contends Radican made the purported statements, is an employee of RSL whose interest would be to deny benefits. Further, the affidavit of Wilson cited to support the above-cited statement which RSL attached to its Cross Motion is not part of the administrative record. Most importantly, Radican did not make the statement cited by plaintiff that "he had worked part-time for approximately one year before the alleged onset of disability." In his sworn affidavit (composite exhibit "C" to plaintiff's motion for summary judgment) submitted to the administrator in his appeal from the second denial letter dated August 3, 1998 (attached hereto as exhibit "A") in which the purported content of the phone conversations between Radican and Wilson was referenced as a basis for the denial (see Exhibit "A" attached hereto) Radican stated in relevant part:

> In the letter from Richard D. Walsh dated August 3, 1998 the following is stated:
>
>> In fact, on at least two separate occasions your client (Mr. Radican) informed us via the telephone that he worked part time throughout 1996.
>
> The reference to "throughout" can be misleading and perhaps there has been some confusion. What I attempted to convey is the truth, i.e., that I worked part time in 1996 but only for those weeks (less than 12) when I received physical therapy and/or pain treatment.
>
> In the letter from Richard D. Walsh dated August 3, 1998 the following is stated:
>
>> He (Mr. Radican) informed us that he worked part time for about one year but was told that he should apply for disability because the company could not longer accommodate him on a part-time schedule.

3

> This is an inaccurate statement. Perhaps I was misunderstood.
> What I attempted to convey was the truth, i.e., the only time
> in 1996 in which I did not work full-time was during those weeks
> when I was receiving medical treatment as referred to above.

RSL states in paragraph 8:

> 8.   During its investigation of the claim, RSL received a
> letter dated February 4, 1998 from Michael Unger who
> stated that the employer "allowed [plaintiff] to work on
> a part-time basis, and continued to work on a part-time
> basis for over one year while receiving physical therapy
> and pain treatments." See plaintiff's motion for sum-
> mary judgment, Exhibit "C".

In the administrative process Radican submitted the sworn affidavit of Michael Unger

(composite exhibit "C" to plaintiff's motion for summary judgment) in which Unger clarified

and explained statements he made in his February 4, 1998 letter sating in relevant part:

> Attached hereto is my letter to Mr. James Wilson, Reliance
> Standard Life Insurance Co., dated February 4, 1998.
>
> My letter dated February 4, 1998 contains the statement:
>
>> Mr Goudie allowed Jim to work on a part-time basis, and
>> continued to work on a part-time basis for over one year
>> while receiving physical therapy and pain treatments.
>
> The above statement does not state, nor did I mean to infer that
> JAMES RADICAN worked only part-time in 1996.  I was
> attempting to convey that JAMES E. RADICAN worked part-
> time during the weeks when he received physical therapy and/or
> pain treatment.

RSL states in paragraph 9:

> 9.   Mr. Unger's letter further states that "Tarmac's policy
> requires employees to work on a full-time basis. Jim
> [plaintiff] was incapable of performing his duties on this
> basis and was required to file for short-term disability ..."

4

> See plaintiff's motion for summary judgment, Exhibit "C".

RSL fails to cite Unger's complete statement in his February 4, 1998 letter and further

ignores that in his sworn affidavit dated January 18, 1999 submitted to the plan administrator

Mr. Unger, in reference to above quote, states:

> My letter dated February 4, 1998 contains the statement:
>
>> Jim was incapable of performing his duties on this (a full-time) basis and was required to file for short term disability on January 1, 1996.
>
> The reference to January 1, 1996 was an inadvertent error. The date should have been January 1, 1997.

RSL states in paragraph 10:

> 10.    After the claim was denied, Mr. Unger submitted an affidavit in which he attempted to "correct" the statements in this earlier letter. See plaintiff's motion for summary judgment, Exhibit "C".

Mr. Unger did not "attempt" to "correct" the statements in his letter. He explained

what his statements conveyed and corrected an inadvertent error. See composite exhibit "C"

to plaintiff's motion for summary judgment.

RSL states in paragraph 11:

> 11.    During its investigation of plaintiff's claim, RSL received a letter dated February 26, 1998 from Edward B. Pittman, Vice President of Human Resources for Tarmac, in which he states that Mr. Radican was "paid full salary and enjoyed full benefits" but "that he worked partial days in 1996." See plaintiff's motion for summary judgment, Exhibit "C".

In the context in which the above quotation is placed it is misleading in that it suggests that the statement "he worked partial days in 1996" means that throughout all of 1996 he at no time worked full-time. It is clear that Mr. Pittman was saying in his letter (exhibit "C" to plaintiff's motion for summary judgment) that there were some days during 1996 in which Radican worked part-time. Mr. Pittman's actual statement is as follows:

> I am in receipt of your letter of February 20, 1998, to Mr. Radican, informing him of an unfavorable determination of his Long Term Disability Claim. You (RELIANCE) have stated that Mr. Radican was working "part-time" when the policy became effective, had not returned to "full time active work" prior to his last day worked and therefore did not satisfy the definition of a full-time employee under the terms of the policy.
>
> Jim Radican was a full-time salaried exempt employee of this company from his date of employment in 1965 until his last day of active work on December 31, 1996. At no time prior to the commencement of his short term disability on January 1, 1997 was he ever on part-time status; he was at all times paid full salary and enjoyed full benefits, including long term disability coverage, for which he paid. The fact that he worked partial days in 1996 following his return to work from surgery should in no way be construed as "part-time" status. Had Mr. Radican been classified a part-time employee, he would have been ineligible for participation in our long term disability benefit at all.

RSL states in paragraph 12:

> 12.  In a letter dated January 1, 1996, plaintiff's treating physician, Manual Porth, M.D. states that "Mr. Radican has been advised to remain out of work for the next 6 months for medical reasons." The doctor hoped that plaintiff could return to work by June, 1996. See plaintiff's motion for summary judgment, Exhibit "D" at page 6.

Neither Radican nor his attorneys were provided with the referenced letter dated January 1, 1996, or any medical records of Dr. Porth. Further, neither Radican nor his attorney's were informed that RSL was relying mainly upon statements made by Dr. Porth until RSL made its final denial of Radican's claim and refused to entertain any further appeal. (See exhibit "D" to plaintiff's motion for summary judgment). Radican was therefore never allowed to explain in the administrative process that the said statement(s) should not be considered as any proof that he had not worked during 1996. In all events, Radican did not act in accordance with the advice of Dr. Porth but continued to work throughout 1996 except for those days when he received physical therapy and/or pain treatment. (See affidavits of Radican, Thomas Mendez, and Craig Leonard) submitted in the administrative process and attached to plaintiff's Motion for Summary Judgment as part of exhibit "C").

RSL states in paragraph 13:

> 13. On March 22, 1996, Dr. Porth states in his records that plaintiff's "quality of life has not significantly improved. He is still unable to return to his job and is aware of his back on a continual basis." See plaintiff's motion for summary judgment, Exhibit "D" at page 6.

See Response to #12 above.

RSL states in paragraph 14:

> 14. On September 16, 1996, Dr. Porth's medical records state that "the patient continues to be symptomatic and is unable to return to work." See plaintiff's motion for summary judgment, Exhibit "D" at page 7.

See Response to #12 above.

7

RSL states in paragraph 15:

> 15. In a letter dated September 16, 1996, Dr. Porth states that following the surgery, plaintiff had "essentially no improvement for severe degenerative disease and spinal stenosis. He has had an attempt at multiple epidural blocks and physical therapy with no improvement." The doctor further states that "[a]t this point the patient is found totally disabled with respect to employment and is advised to remain out of work until further notice." See plaintiff's motion for summary judgment, Exhibit "D" at page 7.

See Response to #12 above. Further, neither this statement or any other made by Dr.

Porth provides that Radican did not work full-time during the entirety of 1996.

RSL states in paragraph 16:

> 16. Under the terms of the plan, employees were not re-quired to contribute to the payment of premiums for coverage. See plaintiff's motion for summary judgment, Exhibit "A" at page 4.0.

The assertion that "[U]nder the terms of the plan employees were not required to

contribute to the payment of premiums for coverage" is not supported by the citation

referenced by RSL, and is false. Whereas it appears that the policy is silent as to premium

contribution by employees in the administrative process, RSL was informed that Radican

paid premiums for his coverage. See letter from B. Edward Pittman, 2nd paragraph, (exhibit

"C" to plaintiff's motion for summary judgment).

## MISSTATEMENTS OF FACT CONTAINED IN RSL's ARGUMENT

In addition to the misstatements in defendant's "Concise Statements of Undisputed Facts" discussed above, in its <u>argument</u> under the heading "Plaintiff Was Not An Eligible Insured Under the Plan," in an attempt to support the reasonableness of its denial, RSL repeatedly employs statements taken out of context and/or fails to address the existence, the import and purport of contrary evidence contained in the administrative record. Those statements include the following:

A.    On the 8th page RSL states "As noted above on the initial claim form, plaintiff stated that on his last day of work, he was working part-time and 'recovering from surgery'."

The extract from the application referred to by RSL is in response to a specific question as to whether Radican worked a full day on December 31, 1996. The full exchange is as follows:

> Before you stopped working, did your condition require
> you to change your job or the way you did your job?
> His answer:
>     Yes
>     Date you were first unable to work on a full-time basis
> His answer:
>     1/1/97 [1]
> Next he was asked:
>     Last day you worked before the disability:
> His answer:
>     12/31/96
> Finally, he was asked:
>     Did you work a full day:
> His answer:

---

[1] Note that Radican states he was first unable to work on a full-time basis on 1/1/97, and his response as to when he worked part-time is directed to his working on a specific day, December 31, 1996.

No - Part time - recovering from surgery

B.    On the 8th page RSL cites to an affidavit of RSL employee James A. Wilson

which it attached to its Cross Motion and states:

> During two telephone conversations with RSL, plaintiff stated
> that he worked part-time for approximately one year before he
> stopped working because his employer could no longer accom-
> modate his part-time schedule. At no time during these tele-
> phone conversations did plaintiff stated that the had ever
> returned to work full-time after his surgery.

Firstly, the purported statements were allegedly made to an employee of RSL  whose interest

would be to deny Radican benefits.

Secondly, RSL makes no mention of the responsive sworn affidavit Radican submitted

to the administrator prior to the final denial in which he states:

> 1.    Throughout 1996, I, JAMES E. RADICAN performed for
> Tarmac America, Inc., the material duties pertaining to my job
> in the place and manner in which his job was normally per-
> formed on a full-time basis, i.e., a minimum of 37.5 hours
> during his regular work week,  with the exception of those
> weeks in which he received physical therapy and/or pain
> treatment. The number of weeks in 1996 I was actively at work
> full-time as defined above totals not less than 40 weeks.
>
> 2.    The only weeks I did not work a minimum of 37.5 hours
> per week in 1996 were those weeks in which I received physical
> therapy and/or pain treatment and which total not more than 12
> weeks.
>
> 3.    In the letter from Richard D. Walsh dated August 3, 1998
> the following is stated:
>
>> In fact, on at least two separate occasions your client
>> (Mr. Radican) informed us via the telephone that he
>> worked part time throughout 1996.

10

The reference to "throughout" can be misleading and perhaps there has been some confusion. What I attempted to convey is the truth, i.e., that I worked part time in 1996 but only for those weeks (less than 12) when I received physical therapy and/or pain treatment.

4.    In the letter from Richard D. Walsh dated August 3, 1998 the following is stated:

> He (Mr. Radican) informed us that he worked part time for about one year but was told that he should apply for disability because the company could not longer accommodate him on a part-time schedule.

This is an inaccurate statement. Perhaps I was misunderstood. What I attempted to convey was the truth, i.e., the only time in 1996 in which I did not work full-time was during those weeks when I was receiving medical treatment as referred to above.

Thirdly, there is no evidence <u>anywhere</u> that during the course of the conversations RSL employee James A. Wilson ever <u>asked Radican whether he worked full-time at any time during 1996</u>.

Fourthly, the affidavit of James A. Wilson referred to by RSL to support the above contentions (RSL's exhibit "1") is not part of the administrative record.

C.    On the 9th page RSL states that in his letter dated February 26, 1998 "Mr. Pittman states that plaintiff 'worked partial days in 1996 following his return to work from surgery' . . . [C]ertainly, this comment supports RSL's position."

The statement by Mr. Pittman that Radican "worked partial days in 1996" when read in the context of the letter does not connote that he only worked part-time in 1996 or that he only worked part-time <u>every day</u> throughout 1996.

11

D.    RSL further states on the 9th page that "Mr. Pittman argued, however, that

plaintiff should be entitled to benefits because he was considered a full-time employee by

Tarmac."

Mr. Pittman's argument was not that he <u>considered</u> Radican a part-time employee.

Mr. Pittman stated:

> Jim Radican was a full-time salaried exempt employee of this
> company from the date of his employment in 1965 until his last
> day of active work on December 31, 1996.  Had Mr. Radican
> been classified a part-time employee he would have been
> ineligible for participation in our long term disability benefits at
> all.

E.    RSL states on the 9th page that Mr. Unger in his letter (unsworn) ". . .states that

at the time plaintiff returned to work after surgery he was 'allowed . . . to work on a part-time

basis and continued to work on a part-time basis for over one year while receiving physical

therapy and pain treatment'. . ."

RSL fails to give any weight to the fact that Mr. Unger, <u>in his sworn affidavit</u>

(composite exhibit "C" to plaintiff's motion for summary judgment) explained as follows:

> My letter dated February 4, 1998 contains the statement:
>
>> Mr Goudie allowed Jim to work on a part-time basis, and
>> continued to work on a part-time basis for over one year
>> while receiving physical therapy and pain treatments.
>
> The above statement does not state, nor did I mean to infer that
> JAMES RADICAN worked <u>only</u> part-time in 1996.  I was
> attempting to convey that JAMES E. RADICAN worked part-
> time during the weeks when he received physical therapy and/or
> pain treatment.

12

F.   RSL further states on the 9th page that Mr. Unger's letter (unsworn) "further states plaintiff was 'incapable of performing his duties on a full-time basis'."

Again RSL fails to give any weight to the submission by sworn affidavit of Mr. Unger in which he stated in relevant part:

> My letter dated February 4, 1998 contains the statement:
>
>> Jim was incapable of performing his duties on this (a full-time) basis and was required to file for short term disability on January 1, 1996.
>
> The reference to January 1, 1996 was an inadvertent error. The date should have been January 1, 1997.

To attempt to separate the statement in the letter from its clarification in the sworn affidavit is to invite misconstruction of the evidence. The conclusion therefore that "all of the information received by RSL showed that plaintiff was working part-time at all times relevant to the claim" is totally unwarranted.

G.   On the 9th and 10th pages RSL makes reference to the statements of Dr. Porth. RSL did not inform Radican or his attorneys that it was relying upon statements made by Dr. Porth until RSL made a final determination to deny benefits at which time it refused to entertain any further appeal.   Radican was therefore never allowed to explain in the administrative process why statements, which he did not know existed, should not be considered as any proof that he had not worked during 1996.

As to the alleged statements of Dr. Porth that Radican was "advised to remain out of work for the next 6 months for medical reasons" and "is unable to return to work," plaintiff's

sworn affidavit that he worked full-time throughout 1996 (40 weeks) makes is clear that he did not follow the advice to remain out of work and that the statement that he was "still unable to return to this job" was made on the assumption that medical advice given was being followed. In the premises, to put forward Dr. Porth's statements as factual without further inquiry is not to present the matter in its full complexion and context.

## THE HEIGHTENED ARBITRARY AND CAPRICIOUS STANDARD OF REVIEW IS APPLICABLE

RSL correctly states that there is language on page 4.0 of the policy which expressly grants RSL discretionary authority to determine eligibility for benefits and construe the terms of the policy. In light of this language plaintiff agrees that the arbitrary and capricious/abuse of discretion standard of review is applicable.[2]  However,  where there is a conflict of interest, as exists is in this case, the heightened arbitrary and capricious standard of review applies. *Brown v. Blue Cross and Blue Shield of Alabama, Inc.* 898 F.2d 1556, 1563-64 (11th Cir. 1990); *Paramore v. Delta Air Lines, Inc.*, 129 F.3d 1446, 1449 (11th Cir. 1997) (citing *Buckley v. Metropolitan Life*, 115 F.3d 936, 939 (11th Cir. 1997)). Also see *Godfrey v. BellSouth Telecommunication*, 898 F.2d 1556, 1559 (11th Cir. 1996).

In the Eleventh Circuit, the arbitrary and capricious standard "must be contextually tailored by the circumstances of a case." *Brown v. Blue Cross and Blue Shield of Alabama,*

_____

[2] *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101; 109 S.Ct. 948, 955; 103 L.Ed. 80 (1989), refers to the standard of review in discretionary situations as abuse of discretion. The 11th circuit has equated the arbitrary and capricious standard and the abuse of discretion standard in post-*Firestone* cases. *Brown v. Blue Cross and Blue Shield of Alabama, Inc.* 898 F.2d 1556, 1558 n.1 (11th Cir. 1990) (citations omitted).

14

*Inc.* 898 F.2d 1556, 1563-64 (11ᵗʰ Cir. 1990). The degree of deference a court should maintain when reexamining the decisions of an administrator under the arbitrary and capricious standard ranges from "slight to great." Id. at 1564. A finding that the administrator is acting under a conflict of interest has a tremendous impact on the evaluation of his determinations. Id at 1565. Greatest deference is accorded to a disinterested, impartial decision maker. Where there is <u>no</u> conflict of interest, the court is limited to determining whether there was a reasonable basis for the administrator's decision based on the facts as knows the administrator at the time the decision was made. *Jett v. Blue Cross & Blue Shield of Alabama*, 890 F.2d 1137, 1139 (11th Cir. 1990). The level of deference is significantly diminished, however, where a conflict of interest exits. Under such circumstances, the proper deference "may be slight, even zero." *Brown v. Blue Cross and Blue Shield of Alabama, Inc.* 898 F.2d 1556, 1559 (11ᵗʰ Cir. 1990), cert. denied, 498 U.S. 1040, 111 S.C. 712, 112 LED.2d 701 (1991); *Godfrey v. BellSouth Telecommunication,* 898 F.2d 1556, 1559 (11ᵗʰ Cir. 1990).

When an insurance company pays out to beneficiaries from its own assets rather than the assets of a trust, its fiduciary role lies in perpetual conflict with its profit-making role as a business." A "strong conflict of interest [exists] when the fiduciary making the discretionary decision is also the insurance company responsible for paying the claims . . ." *Brown*, supra at 1562, also see *Anderson v. Blue Cross/Blue Shield of Alabama*, 907 F.2d 1072 (11ᵗʰ Cir. 1990). "A wrong but apparently reasonable interpretation of the plan is arbitrary and capricious if it advances the conflicting interest of the fiduciary at the expense

15

of the affected beneficiary or beneficiaries unless the fiduciary justifies the interpretation on the ground of its benefit to the class of all participants and beneficiaries." *Brown*, supra at 1567.

A strong conflict of interest exists in this case because RSL, the fiduciary making the benefits decision, is also the insurance company responsible for paying the claims. A highly deferential standard of review is therefore inappropriate. *Brown*, supra at 1562. Applying the appropriate standard of review, the Court must first undertake a *de novo* review of the plan's terms to determine whether the administrator's interpretation is wrong and/or whether the plaintiff propounds a sound and reasonable interpretation of the plan. *Brown*, supra at 1566; *Reed v. American Express Co.*, 863 F.Supp. 1572 (S.D. Fla. 1994). *Lee v. Blue Cross·Blue Shield of Alabama*, 10 F.3d 1547 (11th Cir. 1994).

In its Cross Motion RSL has misconstrued the applicable standard of review in this case. More specifically, under the heading "Standard of Review," RSL states: "Under this deferential standard of review, the fiduciary's decision must be affirmed if reasonable, even if the court would have come to a different conclusion independently." (RSL's Cross Motion, 5th page). A grant of discretion dose not render nugatory a plan administrator's fiduciary duty to act in the interest of beneficiaries under the plan. ". . .[W]hen a plan beneficiary demonstrates a substantial conflict of interest on the part of the fiduciary responsible for benefits determinations, "as exist in this case because RSL pays benefits from its own assets," the burden shifts to the fiduciary to prove that its interpretation of plan

16

provisions committed to its discretion was not tainted by self-interest," *Brown*, supra at 1566.[3]

## ARGUMENT

### A.    PLAINTIFF WAS AN ELIGIBLE INSURED UNDER THE PLAN

Both RSL and Radican agree that to be eligible for benefits under Tarmac's plan, Radican had to be :

1.    A Full-time employee;

2.    Actively at work at sometime during 1996; and

3.    Disabled.

There is no dispute between the parties as to the fact that under the terms of the policy Radican is disabled.   There are therefore only two major issues to be resolved in the sub judice matter, namely, whether Radican was a 'Full-time' employee, and whether he was active as such at anytime during 1996.

### B.    RADICAN WAS A FULL-TIME EMPLOYEE

The policy defines "full-time" thus:  "**'Full-time' means working for you (Tarmac) for a minimum of 40 hours during a person's regular work week.**" During 1996 Radican was among that group of Tarmac employees who, during their regular work week, normally

---

[3] A conclusory statement by an RSL employee (position unknown) that the "Denial of this claim promotes the interest of the plan because it insures that only qualified individuals receive benefits, thus maintaining the premiums at an affordable level for the policy holder," does not rebut the presumption  that RSL's denial was motivated by self interest.

worked a minimum of 40 hours. He was therefore a full-time employee within the policy's definition of that category or class of worker.

The definition of full time in the policy is descriptive, not, as RSL contends, requisitive. It sets out what in fact is simply the job specification as to hours expected to be worked by a full-time employee. Radican was a full-time worker. The term full-time in the context of employment ordinarily, historically, and conventionally connotes employment in which the normal average working hours are 40 per week. There is no ambiguity as to its meaning. In construction, any departure from this interpretation, unless explicitly and unambiguously spelled out in the writing being construed, would necessarily constitute an abuse of discretion. If however, the interpretation of "full-time" contended for by RSL is to be at all entertained, then such consideration would necessarily mean that the term is ambiguous. As such, "full-time" would have to be interpreted in favor of Radican's contention since the abuse of discretion rule does not facilitate a self-interested fiduciary such as RSL interpreting every ambiguous or imprecise provision or expression in a plan in its own favor and against a beneficiary.

> In general terms, fiduciary responsibility under ERISA is simply stated. The statute provides that fiduciaries shall discharge their duties with respect to a plan "solely in the interest of the participants and beneficiaries," § 1104(a)(1), that is, "for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan," § 1140(a)(1)(A). These responsibilities imposed by ERISA have the familiar ring of their source in the common law of trusts. See *Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc.* 472 U.S. 559, 570 (1985) ("[R]ather than explicitly enumerating all of the powers and duties of trustees and other fiduciaries, Congress invoked the common law (understood as including what were once the distinct rules of equity) charges

se

fiduciaries with a duty of loyalty to guarantee beneficiaries' interests: "The most fundamental duty owed by the trustee to the beneficiaries of the trust is the duty of loyalty . . .   . It is the duty of a trustee to administer the trust solely in the interest of the beneficiaries," 2A A. Scott & W. Fratcher Trusts § 170, 311 (4ᵗʰ ed. 1987) hereinafter Scott); see also G. Bogert & G. Bogert, Law of Trusts and Trustees § 543 (rev. 2d ed. 1980) ("Perhaps the most fundamental duty of a trustee is that he must display throughout the administration of the trust complete loyalty to the interests of the beneficiary and must exclude all selfish interests and all consideration of the interests of third persons"); *Central States, supra*, at 5750-571; *Meinhard v. Salmon*, 249 N.Y. 458, 464, 164 N.E. 545, 546 (1928) (Cardozo, J.) ("Many forms of conduct permissible in a workaday world for those acting at arms length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior").

*Pegram, et. al. V. Herdrich*, U.S. Supreme Ct. Opinion decided June 12, 2000, Case

No. 98-1949.

There is no requirement in the definition that a "Full-time" employee **be actively at**

**work for a minium of 40 hours** during his or her regular work week, which is the

interpretation for which RSL argues. Under such a construction not only would the ordinary

understanding of full-time be violated, but, more to the point, **no disabled salaried Tarmac**

**employee would ever be held entitled to benefits as a full time worker under the plan**

**since Tarmac maintains no records respecting the hours worked by its salaried**

**employees**.[4] The disability benefits vouchsafed to qualifying Tarmac employees under the

plan would therefore be mere 'paper' benefits.

---

[4] In RSL's Final denial letter (Exhibit "D" page 7-8 to plaintiff's motion for summary judgment), RSL concedes this as follows: "Tarmac has made it clear that they did not keep attendance records . . . (and) attendance records would appear to be the only documents which could perfect the claim."

## C.    RADICAN WAS ACTIVE DURING 1996

In its Cross Motion, RSL states on the 7th page that "[T]he claim was denied because

RSL did not receive <u>adequate</u> evidence that plaintiff worked 40 hours per week at any time

while the policy was in effect." (emphasis added).  **Proof that a claimant worked 40 hours**

**per week during the currency of the policy is not a requirement for payment of benefits**

**under the policy**.[5]  While the policy provides that in order to be entitled to benefits a

claimant is <u>required to submit "satisfactory proof of Total Disability to"</u> RSL (Exhibit "A"

---

[5]  The provisions governing payment of benefits are set forth under PAYMENT OF
CLAIMS on page 4.0 and INSURING CLAUSE on page 7.0 which provide as follows:

**PAYMENT OF CLAIMS:** When we receive written proof of Total Disability covered by
this Policy, we will pay any benefits due.  Benefits that provide for periodic payment will be
paid for each period as we become liable.

We will pay benefits to the insured, if living, or else to his/her estate.

If the Insured has died and we have not paid all benefits due, we may pay up to $1,000.00 to
any relative by blood or marriage, or to the executor or administrator of the Insured's estate.
The payment will only be made to persons entitled to it.  An expense incurred as a result of
the Insured's last illness, death or burial will entitle a person to this payment.  The payments
will cease when a valid claim is made for the benefit.  We will not be liable for any payment
we have made in good faith.

Reliance Standard Life Insurance Company shall serve as the claims review fiduciary with
respect to the insurance policy and the Plan.  The claims review fiduciary has the discretionary
authority to interpret the Plan and the insurance policy and to determine eligibility for benefits.
Decisions by the claims review fiduciary shall be complete, final and binding on all parties.

**INSURING CLAUSE:** We will pay a Monthly Benefit if an Insured:
- (1)    is Totally Disabled as a result of a Sickness or Injury covered by this Policy;
- (2)    is under the regular care of a Physician;
- (3)    has completed the Elimination Period; and
- (4)    submits satisfactory proof of Total Disability to us.

pg. 7.0 to plaintiff's motion for summary judgment), there is no requirement for a claimant to submit proof, satisfactory or adequate, of the hours he or she has **actually** worked. The adequacy or inadequacy of evidence as to the hours actually worked by a full-time employee is therefore irrelevant to the issue of his entitlement to benefits.

**There is a preponderance of evidence in the administrative record that Radican was actively at work during 1996.** Apparently RSL determined that the sworn affidavits of Radican and his two co-workers **in which each stated that Radican worked a minimum of 37.5 (40) hours per week during 1996**[6] together with the letter and affidavit of Michael Unger, a general manager of a Tarmac company, the letter form Edward B. Pittman, Vice President of Human Resources for Tarmac, and letters from attorneys Marika McVey Ostendorf and Lawrence D. Bache were inadequate to clear up any concern respecting Radican's claim. The aforesaid letters and sworn affidavits clearly outweigh in evidential persuasiveness any potential conclusion to be drawn from the records and statements of Dr. Porth and Ms. Fisher that Radican did not work during 1996, especially since the periods of

---

[6]    The three affidavits plaintiff submitted to the administrator stated that plaintiff worked a minimum of 37.5 hours per week rather than a minimum of 40 hours per week because the only policy plaintiff had received (a copy attached to the complaint), defined "Full-time" as comprehending a standard work-week of a minimum of 37.5 hours. The policy provided by RELIANCE with its November 1, 1999 final denial letter is the same as the policy plaintiff received but changes the standard under the "Full-time" definition from a minimum of 37.5 hours to a minimum of 40 hours. The affidavits submitted refer to a minimum of 37.5 hours rather than 40 hours because this was the minimum number of hours and was not indicative of the amount of hours actually worked.

time to which the records and statements appertain do not constitute the entire 1996 year.[7]

Moreover, with respect to the letter from Hope B. Fisher, it seems reasonably safe to conclude from her statement that Ms. Fisher was simply repeating what her records showed Dr. Porth had opined and recommended respecting the periods to which she referred in her letter, and that independent of Dr. Porth's reports, she had no knowledge of Radican's work time-table. The assumptive information provided to RSL by Dr. Porth and Ms. Fisher cannot reasonably be preferred to the actual knowledge of Radican and his witnesses provided to RSL in the sworn affidavits and statements.

Where there is such a preponderance of evidence, it is inherently arbitrary and capricious to exercise discretion to deny a claimant his ERISA benefits. A fiduciary must act in the interest of a beneficiary claiming under 29 U.S.C. § 1132(a)(1)(b) where there is a preponderance of evidence supporting his claim. The discretion given a plan administrator is not a gavel of authority entitling him to breach his fiduciarial obligations with immunity. ERISA provides that fiduciaries shall discharge their duties with respect to a plan "solely in the interest of the participants and beneficiaries." *Pegram, et. al. v. Herdrich*, U.S. Supreme Ct. Opinion, case no. 98-1949, argued February 23, 2000, decided June 12, 2000. In the premises, the rejection of plaintiff's sworn statement and other evidence that he worked "full

---

[7] The so-called inconsistencies in the evidence attesting to the fact that Radican worked full-time in 1996 arising from information RSL had, but failed to disclose to Radican until it closed the administrative record, were explained away in documentary evidence submitted to RSL during the administrative process. (exhibit "C" to plaintiff's motion for summary judgment).

22

time" in 1996 was without a reasonable basis.[8]  RSL's Motion for Summary Judgment should be denied and judgment for Radican on his Motion for Summary Judgment should be entered.

> **RSL's FAILURE TO INVESTIGATE THE APPARENT CONTRADICTION IN THE EVIDENCE RESPECTING RADICAN's WORK HISTORY, AND TO AFFORD RADICAN AN OPPORTUNITY TO ADDRESS THE EVIDENCE GIVING RISE TO THE CONTRADICTION CONSTITUTED ABUSE OF DISCRETION**

## A.    RSL's Failure to Investigate the Apparent Contradiction

Faced with the apparent conflict between some of the statements in documents obtained from Dr. Porth and Ms. Ficher, and all the other pertinent evidence, sworn and unsworn, respecting the issue of Radican's work history, the central concern in determining Radican's eligibility for benefits, RSL was fiduciarily obliged to seek clarification with respect thereto. To have exercised discretion to deny Radican's claim without so doing and simply state that the evidence provided was "inadequate" (RSL's Cross Motion, 7th page) and "inconclusive" (exhibit "D" to plaintiff's motion for summary judgment) constituted a gross dereliction of fiduciarial duty, particularly since RSL was a self-interested fiduciary required to bring "an eye single" toward Radican's interest. *Pegram*, (supra) citing *Donovan v. Bierwirth*, 680 F.2d 263, 271 (CA 2 1982).  Failure to investigate and resolve the conflict

---

[8] Plaintiff maintains that the normal average working hours of a person employed full-time is 40 hours per week, and that the status of such a person as a full-time worker does not change to that of a part-time worker because that persons fails to work a 40 hour week during any particular week or weeks.  Classification is a matter of intention and agreement, not of performance.

23

is itself an abuse of discretion. See *Shannon v. Jack Eckerd Corp.*, 113 F.d 3rd 208 (11th Cir 1997) where the court said that an administrator "had an obligation to make a reasonably relevant inquiry." Encompassed within ERISA plan trustees' fiduciary duty is the duty of proper investigation of matters essential to denial. *Olson v. Troike*, 959 F.Supp 847 (N.D. Ill. 1997). "To afford a plan participant whose claim has been denied a reasonable opportunity for a full and fair review, the plan's fiduciary must consider any and all pertinent information reasonably available to him." *Grossmuller v. Intern. Union, United Auto; Aero,* 715 F.2d 853, 857 (3rd Cir. 1983). (emphasis added).

## B.    RSL's Failure to Afford Radican an Opportunity to Address Evidence Giving Rise to the Apparent Contradiction

ERISA mandates that a participant receive a full and fair review of a denied claim for benefits. In its first denial letter dated April 6, 1998 (exhibit "B" to plaintiff's motion for summary judgment) RSL, in accordance with 29 C.F.R. § 2560-503-1-(F) detailed the evidence upon which it based its determination to deny Radican's claim, and afforded Radican a reasonable opportunity to respond to that evidence, which he did. In its second denial letter dated August 3, 1998 (Exhibit "A" hereto) RSL further detailed evidence upon which it was relying in determining to deny Radican's benefits, and, at the request of Radican, afforded him an opportunity to respond to that evidence. In its third and Final Denial letter (exhibit "D" to plaintiff's motion for summary judgment) RSL informed Radican for the first time that in making the final denial of its benefits it was mainly relying on the following evidence:

24

     (1)     statements made by Dr. Porth in medical records and letters;

     (2)     statements made by Hope B. Fisher in a letter dated December 31, 1996; and

     (3)     statements made by Radican in his application for benefits.

In making the aforementioned final denial RSL made it clear that it would not allow Radican any further response. Radican was therefore never given the opportunity in the administrative process to provide a response and/or rebuttal to explain why this hitherto undisclosed evidence did not provide a basis for concluding that he had failed to work the hours of a "Full-time" employee during 1996. "The fiduciary must also inform the participant of what evidence he relied upon and provide him with an opportunity to examine that evidence and to submit written comments or rebuttal documentary evidence." *Grossmuller v. International Union, United Auto, Aero,* 715 F.2d 853, 858 (3rd Cir. 1983). While Radican agrees with RSL's statement that "The ERISA statute and regulations do not require a plan to identify every piece of information it has reviewed in evaluating a claim," ERISA's requirement that a full and fair review be provided is clearly violated when, as in this case, the evidence relied upon as the basis for the final denial was withheld until the close of the administrative record thereby precluding the claimant an opportunity to respond thereto.[9]

---

[9] RSL's statement on the 12th page of its Cross Motion for Summary Judgment that it substantially complied with the ERISA provision governing a full and fair review because it "advised [Radican of] the information needed to perfect his claim for review" is false. At no time was Radican so advised. See RSL's initial denial letter (exhibit "B" to plaintiff's motion for summary judgment) and RSL's second denial letter (exhibit "A" hereto) and final denial letter (exhibit "D" to plaintiff's motion for summary judgment).

**RSL's ACCEPTANCE AND CONTINUING RETENTION OF PREMIUMS PAID BY OR ON BEHALF OF RADIC-AN CONSTITUTED A WAIVER OF ANY RIGHT TO ALLEGE THAT RADICAN WAS NOT AN ELIGIBLE INSURED UNDER THE PLAN**

RSL received and continued to retain the premiums paid (monthly) with respect to coverage for RADICAN for the entire year of 1996. (See Pittman letter, 2nd paragraph, exhibit "C" to plaintiff's motion for summary judgment, and RSL's cross motion, page 8). In the circumstances of this case, RSL's acceptance and continuing retention of premiums constitutes a waiver of any right they might otherwise have had to deny that RADICAN was an eligible insured under the plan. RSL first denied Radican's benefits on the basis of ineligibility on <u>April 6, 1998</u>. (Exhibit "B" to plaintiff's motion for summary judgment). RSL's retention of the premiums thereafter, and up to the present time therefore constitutes "voluntary intentional relinquishment of a known right," namely, the right to consider Radican to be a person ineligible for benefits under the plan.[10]  See *Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341, 1347 (11th Cir. 1994).  In *Glass*, Id. at 358 the court discussing waiver said:

> In other cases, although the plaintiff did not prove reliance, the circumstances involved something more than a bare misrepresentation, often involving situations in which it was apparent that the insurance company was attempting to reap an unjust benefit, e.g., accepting premiums after the insurer's defense to coverage was know and clear, thus giving the insurance com-

---

[10] RSL's contention that "RSL had no way of knowing that plaintiff was not working full-time in 1996" because the employer (Tarmac) did not so inform them, is without merit.  Tarmac consistently maintained that Radican was a full time salaried employee and was working in that capacity throughout 1996.

> pany the option of keeping the premiums if beneficial to it or at
> its option returning the premiums and cancelling the policy
> when it was convenient to do so, i.e., after a claim was made.

In the instant case, having denied Radican's claim on April 6, 1998 on the basis that Radican

was not covered under the plan because he was not and had never been a full-time worker,

RSL nevertheless retained and continues to retain the premiums paid for the entire year of

1996.  RSL's retention of Radican's premiums constitutes unjust enrichment and is an

outrageous, bad faith, unjust benefit circumstance, and as such mandates a finding of an

abuse of discretion.

**WHEREFORE**, Plaintiff, respectfully request this Honorable Court deny Reliance

Standard Life Insurance  Company's cross motion for summary judgment and  grant plaintiff

James E. Radican's Motion for Summary Judgment on the issue of liability.

Respectfully submitted this 23rd day of June, 2000.

### Certificate of Service

I HEREBY CERTIFY that a true and correct copy of the foregoing has been sent via

U.S. mail this 23rd day of June, 2000 GENE D. LIPSCHER,  Alley, Maass, Rogers, &

Lindsay, P.A., Attorney for Defendant, 321 Royal Poinciana Plaza South , P.O. Box 431

Palm Beach, FL 33480-0431.


By: _____          By: _____
     LAWRENCE D. BACHE                      ROY L. TAYLOR
     Florida Bar No. 0557935                Florida Bar No. 403225

Law Office of Lawrence D. Bache  
9000 West Sheridan Street, Suite 174  
Pembroke Pines, Florida 33024  
(954) 436-7376;  
Fax (954) 436-2926  
email: Lawbache @ aol.com

Law Office of Roy Taylor  
14 NE 1st AVE., No. 601  
Miami, FL 33132  
(305) 358-8813

C \MyFiles\Radican\Reply MSJ 01A.wpd



August 3, 1998

Marika McVey Ostendorf, Esq.
Ober, Kaler, Grimes & Shriver
120 East Baltimore Street
Baltimore, MD 21202-1643

Re :        James E. Radican
Claim # :   1997-346-010
Policy # :  LSC 98842

Dear Ms. McVey Ostendorf:

We are writing to you regarding the appeal of our decision to deny benefits to your client, James
Radican. Please be advised that Reliance Standard Life Insurance Company ("RSL") strives to
treat all clients fairly and evaluate claims submitted to us in an objective and equitable manner.

Under the Employee Retirement Income Security Act ("ERISA") of 1974 you are entitled to an
independent review of the claim facts and the determination made regarding your client's
eligibility for benefits. Your client's file was referred to our Quality Review Unit to conduct such
a review. This review has been conducted separately from the individual(s) who made the original
determination to deny your benefits.

We have completed our initial review of the claim file and have found that our original
determination to deny liability was appropriate.

We do not have any conclusive evidence to support your client's contention that he *worked* on a
full-time basis for Tarmac America, Inc. after January 1, 1996. The letter from B. Edward
Pittman, Vice President of Human Resources for Tarmac does not report that your client was
working on a full-time basis during 1996 as you report. Rather, the letter states that your client
was always considered a full-time salaried exempt employee and was never placed on part-time
status. Not only does the letter avoid the issue of hours worked by your client, it appears to admit
that he was not working full-time hours when it states:

> The fact that he worked partial days in 1996 following his return to work from surgery
> should in no way be construed as "part-time" status. Had Mr. Radican been classified a
> part-time employee, he would have been ineligible for participation in our long term
> disability benefit at all.

2501 Parkway, Philadelphia, Pennsylvania 19130-2499
(215) 787-4000
(800) 351-7500      **Exhibit "A"**


Reliance Standard Life
Insurance Company®

-3-

Nothing in this letter should be construed as a waiver of any of RSL's rights and defenses under the above captioned policy, and all of these rights and defenses are reserved to the Company, whether or not specifically mentioned herein

Sincerely,

Richard D. Walsh
Assistant Manager, Quality Review Unit

The image is at the top with the Reliance Standard logo.



-2-

The quotation above is representative of much of the letter. Nowhere in the letter does Mr. Pittman explain the number of hours your client actually worked but instead talks about what status was assigned to him during calendar year 1996. Unfortunately, we are not interested in the employment classification of your client, but rather in the number of hours per week he actually worked.

Every indication we have points to the fact that your client never returned to full-time work after his surgery in 1995. In fact, on at least two separate occasions your client informed us via the telephone that he worked part-time throughout 1996. He informed us that he worked part-time for about one year but was then told that he should apply for disability because the company could no longer accommodate him on a part-time schedule.

The travel expense reports which you provided do not conclusively demonstrate that your client was working on a full-time basis during any time in 1996. The reports show that your client traveled for business during the months of December 1995, and January/August of 1996, but they do not show that he worked on a full-time basis.

Furthermore, we do not understand how you wished us to interpret these expense reports in order to come to the conclusion that they proved your client was a full-time employee. The following example indicates why the expense reports are not a good indicator of hours worked by your client. Your letter relates that your client underwent physical therapy x per week for 3 hours per session during December of 1995. Despite a loss of approximately 6 hours per week (not including travel time to and from physical therapy) your client traveled 1,380 miles for work during that month. When compared to August of 1996, when your client was not undergoing physical therapy, we find that your client traveled significantly less miles than he did in December of 1995. In August of 1996 your client traveled 1,050 miles for business despite an extra six hours per week which were not devoted to physical therapy. If we were to determine hours worked using expense reports we would have to come to the conclusion that Mr. Radican worked more hours in December of 1995 than in August of 1996 because of the significantly greater number of miles which he traveled during December of 1995. It is my understanding that such a conclusion would be inaccurate as your client actually worked less hours in December of 1995 due to physical therapy. Accordingly, it is impossible for us to determine actual hours worked through the use of Mr. Radican's expense reports.

Therefore, based upon the information above and the lack of conclusive evidence of full-time work by your client, we have concluded that our previous decision to deny benefits to your client was appropriate. Accordingly, no benefits are payable and your client's file will remain closed at this time.

We regret that our decision could not have been more favorable to your client, however, we are limited by the provisions of the policy. Please be advised that our claim decision is now final as you have exhausted any administrative remedies available to your client under the terms of his policy.