IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| JAMES E. RADICAN<br><br>Plaintiff,<br><br>v.<br><br>RELIANCE STANDARD LIFE<br>INSURANCE COMPANY, a foreign<br>corporation,<br><br>Defendant. | CIVIL ACTION<br>CASE NO.: 00-6024-CIV-ZLOCH<br>MAGISTRATE: Seltzer<br><br>**NIGHT BOX**<br>FILED<br>OCT - 3 2001<br>CLARENCE MADDOX<br>CLERK, USDC/SDFL/FTL |

### DEFENDANT'S ANSWER AND MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

Defendant Reliance Standard Life Insurance Company ("RSL"), by and through its

attorneys, hereby responds to Plaintiff's Renewed Motion for Summary Judgment on the

Issue of Liability and by way of cross motion, renews RSL's Motion for Summary Judgment

in its favor, and in support thereof avers as follows:

### RESPONSE TO PLAINTIFF'S
### CONCISE STATEMENT OF UNDISPUTED FACTS

1. Admitted.

2. Denied.

3. Admitted except that it is denied that RSL was the plan administrator.

4. Admitted. By way of further answer, it is denied that plaintiff was an eligible

0568062.01



30

insured under the policy.

5. It is admitted that the policy states in part the language quoted by plaintiff.

6-7. Admitted.

8-9. Denied.

10-12. Admitted.

13-14. Admitted in part and denied in part. It is admitted that the exhibits referred to are attached to the motion of plaintiff. Plaintiff's characterization of the exhibits is denied. It is further denied that plaintiff was employed full time in 1996.

15. Denied as stated. Premiums are received by the defendant. It is admitted that RSL is responsible for any payments owed under the policy.

16. Denied.

17-18. Admitted upon information and belief. By way of further answer, payment as a full time employee does not satisfy the plan's eligibility requirements. Plaintiff was not actually working full time, therefore, he is ineligible.

19. Denied. It is denied that plaintiff was insured under the subject policy.

20. Admitted upon information and belief. By way of further answer, receipt of other benefits of employment does not satisfy the plan's eligibility requirements. Plaintiff was not actually working full time, therefore, he is ineligible.

21. Denied. Plaintiff paid no premiums for coverage under the RSL plan. See plaintiff's Exhibit A at page 1.1, contributions.

22. Admitted in part and denied in part. It is admitted that RSL received premiums. The plan is self-administered by the employer regarding enrollment, therefore,

RSL had no way of knowing that plaintiff was ineligible. Under the terms of the policy, the employer did not have the authority to alter the terms of the plan or bind defendant. The remaining averments are denied.

23.  Denied.

## COUNTER-STATEMENT OF MATERIAL FACTS

1    Under the terms of the plan, the effective date of individual insurance under the plan commences when a person becomes an "active, full-time employee." See plaintiff's Exhibit "A," at page 1.0.

2    The plan further defines "Full-time" as "working for (Tarmac) for a minimum of 40 hours during a person's regular work week. See plaintiff's Exhibit "A." at page 2.0.

3    On October 3, 1995, plaintiff underwent decompressive laminectomy surgery due to a herniated disc in his spine.

4    The subject policy went into effect after plaintiff's surgery. See plaintiff's Exhibit "A."

5.   On a claim form submitted by plaintiff to RSL, he stated that on the last day that he worked before the alleged onset of disability he was working part-time and "recovering from surgery."

6.   During two telephone conversations with James Wilson, Jr., of RSL, plaintiff stated that he had worked part-time for approximately one year before the alleged onset of disability. See Affidavit of James Wilson, Jr., a copy of which is attached as Exhibit "A;" plaintiff's Exhibit "D," at page 3.

7.   During its investigation of the claim, RSL received a letter dated February 4,

0568062.01

3

1998 from Michael Unger who stated that the employer "allowed [plaintiff] to work on a part-time basis, and continued to work on a part-time basis for over one year while receiving physical therapy and pain treatments." See plaintiff's Exhibit "C."

8.   Mr. Unger's letter further states that "Tarmac's policy requires employees to work on a full-time basis. Jim [plaintiff] was incapable of performing his duties on this basis and was required to file for short-term disability..." See plaintiff's Exhibit "C."

9.   After the claim was denied, Mr. Unger submitted an affidavit in which he attempted to "correct" the statements in this earlier letter. See plaintiff's Exhibit "C."

10.   During its investigation of plaintiff's claim, RSL received a letter dated February 26, 1998 from B. Edward Pittman, Vice President of Human Resources for Tarmac, in which he states that plaintiff was "paid full salary and enjoyed full benefits" but "that he worked partial days in 1996." See plaintiff's Exhibit "C."

11.   In a letter dated January 1, 1996, plaintiff's treating physician, Manual Porth, M.D. states that "Mr. Radican (plaintiff) has been advised to remain out of work for the next 6 months for medical reasons." The doctor hoped that plaintiff could return to work by June, 1996. See plaintiff's Exhibit "D," at page 6.

12.   On March 22, 1996, Dr. Porth states in his records that plaintiff's "quality of life has not significantly improved. He is still unable to return to his job and is aware of his back on a continual basis." See plaintiff's Exhibit "D," at page 6.

13.   On September 16, 1996, Dr. Porth's medical records state that "the patient continues to be symptomatic and is unable to return to work." See plaintiff's Exhibit "D," at page 7.

0568062.01

14. In a letter dated September 16, 1996, Dr. Porth states that following the surgery plaintiff had "essentially no improvement for severe degenerative disease and spinal stenosis. He has had an attempt at multiple epidural blocks and physical therapy with no improvement." The doctor further states that "[a]t this point the patient is found totally disabled with respect to employment and is advised to remain out of work until further notice." See plaintiff's Exhibit "D," at page 7.

15. RSL serves as the claims review fiduciary with respect to the plan. See plaintiff's Exhibit "A," at page 4.0.

16. The plan documents further state that as claims review fiduciary, RSL "has the discretionary authority to interpret the plan and the insurance policy and to determine eligibility for benefits." See plaintiff's Exhibit "A," at page 4.0.

17. This claim was remanded by the court to RSL so that additional evidence could be reviewed that was not provided to RSL when it originally decided the claim.

18. In accordance with the court's instructions, a third review of the claim was conducted following receipt of information from plaintiff's counsel.

19. None of the "new" information provided by plaintiff alters the correctness of the decision to deny the claim. The "new" information was contradictory, not based on personal knowledge and generally unreliable.

20. The decision to deny the claim should be affirmed by the court.

### ARGUMENT AND LEGAL AUTHORITY

**1.    Summary Judgment Procedure**

Plaintiff has correctly set forth the law applicable to motions for summary judgment.

0568062.01

RSL disputes, however that plaintiff is entitled to summary judgment in his favor. On the contrary, for the reasons discussed below, plaintiff's summary judgment motion must be denied. Moreover, based on the applicable law, RSL is entitled to summary judgment in its favor.

2. **Standard of Review**

Plaintiff's brief correctly states that the Policy grants RSL discretionary authority to determine eligibility for benefits and construe the terms of the Policy. Where, as in this case, the party making decisions on eligibility is granted discretionary authority, the deferential arbitrary and capricious standard of review is applied to its decisions. See Firestone Tire and Rubber Company v. Bruch, 489 U.S. 101, 109 S.Ct. 948 (1989); Buckley v. Metropolitan Life Insurance Company, 115 F.3d 936, 939 (11th Cir. 1999). Under this deferential standard of review, the fiduciary's decision must be affirmed if it is reasonable, even if the court would have come to a different conclusion independently. Ellis v. Metropolitan Life Insurance Company, 126 F.3d 228, 232 (4th Cir. 1997).

Plaintiff's brief argues that the heightened arbitrary and capricious standard should be applied since RSL is responsible for making decisions on claims and is also responsible for paying benefits. See Brown v. Blue Cross and Blue Shield of Alabama, Inc., 898 F.2d 1556 (11th Cir. 1990). For the reasons discussed below, RSL's decision to deny the claim should be affirmed by this court under the first prong of the applicable tests because its decision is legally correct. Moreover, the denial of this claim promotes the interest of all plan participants because it guarantees that only eligible individuals may recover benefits, thus maintaining the premiums at an affordable level. See plaintiff's Exhibit "A."

0568062.01

Therefore, RSL's decision is entitled to the utmost deference.

    a.    **Plaintiff Was Not An Eligible Insured Under the Plan.**

The subject plan sets forth specific eligibility requirements as identified by plaintiff on pages 12 and 13 of his brief. See also plaintiff's Exhibit "A," at pages 1.0 and 2.0. As stated in the Plan, the effective date of individual coverage commences when premiums are paid and an individual meets the eligibility requirements. See plaintiff's Exhibit "A," at page 5.0. To be in an eligible class, a person must be an "active, Full-time employee." See plaintiff's Exhibit "A," at page 1.0. The policy defines "Full-time" as "working for [Tarmac] for a minimum of 40 hours during a person's regular work week." See plaintiff's Exhibit "A," at page 2.0.

Plaintiff first suggests that the term "Full-time" is ambiguous. In support of this argument, plaintiff states that RSL "misinterpreted" the definition to require an individual to work 40 hours per week "at all times." See brief of plaintiff at page 12. RSL has never maintained this position. The claim was denied because RSL did not receive adequate evidence that plaintiff worked 40 hours per week at any time while the policy was in effect. More important, there is no basis for such argument because the policy contains a straight-forward definition of that term.

Plaintiff essentially argues that he was a full-time employee because his employer classified him as such, paid him a full salary and granted to him full benefits. See brief of plaintiff at page 13. This argument ignores the definition of "Full-time" stated in the policy which requires an employee to work a minimum of 40 hours per week. The courts are required to enforce the terms of ERISA plans as written. Katz v. Comprehensive Plan of

0568062.01

Group Ins., 197 F.3d 1084 (11th Cir. 1999); Chiles v. Ceridian Corp., 95 F.3d 1505, 1515 (10th Cir. 1996); Jensen v. Sipco, Inc., 38 F.3d 945, 949 (8th Cir. 1994). Because plaintiff's requested definition of "Full-time" is contrary to the terms of the Plan, it must be rejected.

It is simply irrelevant that in 1996, plaintiff was paid and received benefits as a full-time employee of Tarmac. It is also irrelevant to the issue of coverage that RSL accepted premiums. See plaintiff's brief at page 14. The subject plan is self-administered. Accordingly, all of the enrollment functions are carried out by the employer. Under the "RECORDS MAINTAINED" section of the policy, the employer must provide to RSL "essential data of the insurance, including new persons, terminations, changes, etc." See plaintiff's Exhibit "A," at page 3.0. The policy further requires Tarmac to provide this information "regularly."

Pursuant to this provision in the policy, RSL relies on the information provided by the policyholder. RSL had no way of knowing that plaintiff was not working full-time in 1996. Nor is the term "Full-time" ambiguous. Accordingly, plaintiff does not have a valid estoppel claim. See Katz, supra (holding that estoppel under ERISA only applies to the interpretation of ambiguous plan terms). Additionally, there was no valid waiver of the eligibility requirements. See plaintiff's Exhibit "A," at page 3.0, "CHANGES." See also Sippel v. Reliance Standard Life Insurance Company, 128 F.3d 1261 (8th Cir. 1997) (holding that mere acceptance of premiums cannot provide a basis for coverage that otherwise does not exist).

None of the information provided to RSL during its initial investigation supported

0568062.01

plaintiff's claim of eligibility. As noted above, on the initial claim form, plaintiff stated that on his last day of work he was working part-time and "recovering from surgery." See plaintiff's Exhibit "D," at page 3. During two telephone conversations with RSL, plaintiff stated that he worked part-time for approximately one year before he stopped working because his employer could no longer accommodate his part-time schedule. At no time during these telephone conversations did plaintiff state that he had ever returned to work full-time after his surgery.

Information provided by the employer also supports RSL's decision. B. Edward Pittman, Vice President of Human Resources for Tarmac, wrote to RSL on February 26, 1998. See plaintiff's Exhibit "C." In the letter, Mr. Pittman states that plaintiff "worked partial days in 1996 following his return to work from surgery." See plaintiff's Exhibit "C." Certainly, this comment supports RSL's position. Mr. Pittman argued, however, that plaintiff should be entitled to benefits because he was considered a full-time employee by Tarmac. For the reasons stated above, this view is unacceptable because it is contrary to the express terms of the plan.

RSL also received a letter from Michael Unger, General Manager of a company affiliated with Tarmac. In the February 4, 1998 letter, Mr. Unger states that at the time plaintiff returned to work after surgery he was "allowed...to work on a part-time basis and continued to work on a part-time basis for over one year while receiving physical therapy and pain treatment." See plaintiff's Exhibit "C." The letter further states plaintiff was "incapable of performing his duties on a full-time basis." See plaintiff's Exhibit "C." Thus, all of the information received by RSL showed that plaintiff was working part-time at all

0568062.01

times relevant to the claim.

The medical records submitted to RSL also did not support plaintiff's claim that he worked full-time at any point during 1996. See plaintiff's Exhibit "D." Plaintiffs treating physician, Dr. Manuel Porth states on January 1, 1996 that plaintiff was "advised to remain out of work for the next 6 months for medical reasons." The doctor did not state, however, that Mr. Radican would definitely be able to return at that time. Later records from Dr. Porth confirmed that plaintiff was having physical problems after his surgery. On March 22, 1996, Dr. Porth noted that plaintiff's condition "has not significantly improved." Dr. Porth further states that plaintiff "is still unable to return to this job." See plaintiff's Exhibit "D."

Two documents from Dr. Porth dated September 16, 1996 demonstrate that plaintiff was still limited in his ability to work. Dr. Porth's medical records for that date state that "in spite of continued therapy, epidural blocks, analgesic medications, the use of physical therapy and corset immobilization, the patient continues to be symptomatic and is <u>unable to return to work</u>." See plaintiff's Exhibit "D." In a letter dated September 16, 1996, Dr. Porth repeats that plaintiff had "essentially no improvement" in his condition. Moreover, the doctor stated that plaintiff "is found totally disabled with respect to employment and is advised to remain out of work until further notice."

The records described above provide more than a reasonable basis for RSL's decision. These records establish that Mr. Radican did not work full-time as defined by the policy as consisting of working a minimum of 40 hours per week, at any time after the policy went into effect. Therefore, RSL's decision was correct and should be affirmed by

0568062.01

this court.

Realizing the effect of the responses on his claim, plaintiff attempted to rescind and revise nearly all of the statements that he made to RSL as well as the statements made by Tarmac. For example, in an affidavit that was subsequently provided to RSL, plaintiff stated that he did not actually mean that he worked part-time throughout 1996 as previously stated. Plaintiff now claimed that he only worked part-time in 1996 during those weeks that he received physical therapy and/or pain treatment, which numbered less than 12. This statement is flatly contradicted by the medical records mentioned above. As of March, Dr. Porth stated that plaintiff was still unable to return to his job. This time frame alone spans 12 weeks. Moreover, Dr. Porth's September 16, 1996 letter declared plaintiff totally disabled and the doctor advised plaintiff to stay out of work. Accordingly, plaintiff was either out of work or working part-time a great deal more than the 12 weeks he claimed.

At the request of plaintiff, Mr. Unger provided RSL with an affidavit in which he too claimed that his earlier statements were inaccurate. In his affidavit, Mr. Unger stated that plaintiff worked only part-time in 1996. It is hard to imagine how else his words can be interpreted. Mr. Unger earlier stated that plaintiff was allowed to return to work "on a part-time basis and continued to work on a part-time basis for over one year while receiving physical therapy and pain treatment." He also stated that plaintiff was "incapable of performing his duties" on a full-time basis. Once again, these words clearly reflect a lack of full-time employment by plaintiff. It was not until after the claim was denied that Mr. Unger sought to "clarify" his statements.

0568062.01

Plaintiff also relied on affidavits from some co-workers in support of his claim that he worked full-time in 1996. These affidavits are of little value. Both of the co-workers state that they worked with plaintiff "throughout 1996." This information is obviously false based on the medical records described above. Moreover, the affidavits fail to explain what, if any, job duties were observed, where plaintiff was working and any specific dates when this took place. It should be noted that plaintiff's job involved extensive travel and therefore, one has to question where these individuals allegedly saw plaintiff work.

b. **The "New" Evidence.**

In accordance with the court's remand order, RSL reviewed additional documents provided by plaintiff in support of his claim. Information provided by plaintiff upon remand to the plan administrator supports RSL's prior decisions to deny benefits. Following this Court's Order to Remand, plaintiff supplied affidavits from the following persons in an attempt to prove that plaintiff in fact achieved full-time status: (1) Hope E. Fischer, Benefits Administrator for Tarmac; (2) Marcel Aragon, a person who claims to have worked with plaintiff at Tarmac, position unspecified; (3) James E. Radican, (4) plaintiff; and (5) Dr. Manuel Porth, plaintiff's physician. None of the affidavits, however, provide any proof that plaintiff worked over forty (40) hours per week at any time during calendar year 1996. See plaintiff's Exhibit "E." The affidavits contain mere claims that plaintiff worked forty (40) hours per week without any accompanying evidence to support their respective assertions. In the final denial letter dated July 23, 2001, Richard Walsh, Manager of RSL's Quality Review Unit summarized the additional information considered on remand as follows:

As [plaintiff] [was] a sales person who spent a great deal of his

0568062.01

> work time alone making calls, it is difficult to understand how these persons had personal knowledge of his work hours, especially in light of the fact that the company did not even keep track of his work hours. While [plaintiff] claims to be able to explain why the numerous references to his part-time work status were inaccurate, the fact that so many such references exist, makes the most plausible explanation that [he] in fact worked only part-time during calendar year 1996.

Brief of plaintiff, Exhibit "E."

None of the additional evidence provided by plaintiff on remand supports plaintiff's claim that he worked 40 hours per week at any time during 1996. The affidavits merely contain conclusory statements which are contradictory to earlier ones made by these individuals and which are made without any factual support. Accordingly, it cannot be said that RSL's rejection of these affidavits is arbitrary or capricious.

As stated above, during <u>two</u> separate telephone conversations with RSL, plaintiff stated that he had been working part-time during 1996 due to his physical problems. In his most recent affidavit, plaintiff claims that his comments were misinterpreted by RSL. It is more likely that these statements were made by plaintiff but then retracted when he realized their effect. Perhaps there would be more credibility to plaintiff's position if he did not make other contradictory statements. For example, in his earlier affidavit to RSL, plaintiff claimed that he worked 37.5 hours per week for certain weeks during 1996. Counsel for plaintiff later realized that the definition of total disability contained in the policy defines full-time as working 40 hours per week during a person's regular work week. See plaintiff's Exhibit "A" at page 2.0. Therefore, in the most recent affidavit, plaintiff now claims that he worked 40 hours per week in 1996. Plaintiff offers no explanation for this

0568062.01

change in his affidavit other than the fact that there would be no coverage based on his earlier statement. Based on the totality of the evidence and the inconsistency in plaintiff's various statements, as well as his interest in the outcome, his most recent affidavit cannot be considered credible evidence that should have been relied upon by RSL.

Interestingly, plaintiff was not the only person who told RSL that he only worked for 37.5 hours per week in 1996. Plaintiff also submitted statements from co-workers to that effect. Now, plaintiff has included an affidavit from Marcel Aragon claiming that plaintiff worked 40 hours per week during the year. Her statement is inconsistent with the earlier statements and is an obvious attempt to fit this claim within the coverage. Ms. Aragon provided RSL with no support for a claim that Mr. Radican worked for over 40 hours per week for a period of time in 1996. In the earlier denial letters, RSL advised plaintiff that these co-worker affidavits were insufficient because they did not state where or when the co-workers observed plaintiff working. Plaintiff has not corrected this problem with the affidavit of Ms. Aragon. Nowhere does Ms. Aragon state where or in what capacity she worked with the plaintiff. This is especially peculiar since plaintiff worked as a sales representative and was on the road much of the time. There is no evidence that Ms. Aragon traveled with plaintiff nor does she explain how she observed him working.

The same flaws that exist with respect to Ms. Aragon's affidavit are present with the affidavits of Mr. Mendez and Mr. Leonard. Each of these affidavits was obviously prepared by counsel for plaintiff and are virtually identical. Each states that the individual has personal knowledge that plaintiff performed "the material duties pertaining to his job in the place and manner in which his job was normally performed on a full-time basis." None of

0568062.01

these affidavits, however, states which weeks during 1996 plaintiff was observed working, what the material duties of his job were or what duties were observed by the co-worker. These non-specific vague statements cannot support plaintiff's claim.

Plaintiff also submitted an affidavit by Hope Fischer who was the Benefits Administrator of Tarmac in 1996. Earlier, Ms. Fischer told RSL that plaintiff did not work full-time at any time in 1996. Ms. Fischer now tries to recant that statement by saying she had no personal knowledge when she made the statement. Oddly, Ms. Fischer now states that she believes that he was working more than 40 hours per week in 1996. How can this statement be taken seriously based on her admitted lack of personal knowledge? As stated in paragraph 6 of her affidavit, Ms. Fischer's change in position was based on letters from counsel for plaintiff. These are obviously one-sided. At the very least, counsel for plaintiff could have provided Ms. Fischer with the RSL denial letters so that she could have a full understanding of the decision. It is obvious that counsel for plaintiff did not want Ms. Fischer to arrive at the correct conclusion, but only the conclusion that he wanted.

RSL also received an affidavit from Manuel Porth, M.D. In January and September of 1996, Dr. Porth stated that plaintiff was not able to return to work due to his back problems. Plaintiff's difficulty with his back following his surgery was also discussed in Dr. Porth's medical records. The comments in Dr. Porth's affidavit do not support plaintiff's claim that he was working full-time in 1996. Instead, Dr. Porth merely states that he has no personal knowledge of whether plaintiff was working. Based on the comments in the earlier records, it is obvious that plaintiff was physically incapable of working and asked Dr. Porth to certify this fact.

0568062.01

Plaintiff has now had multiple opportunities to provide proof that he worked full-time at any time in 1996. All that has been provided to Reliance Standard are conflicting and conclusory statements with no actual proof. Therefore, plaintiff's claim was properly denied.

Significantly, plaintiff's brief contains a statement which confirms his ineligibility for benefits. On page 17 of his brief, plaintiff states that "there was no way for plaintiff to establish his eligibility for benefits, because he was a salaried and not an hourly employee." "A plaintiff suing under [Section 502(a)(1)(b) of ERISA] bears the burden of proving his entitlement to contractual benefits." Horton v. Reliance Life Insurance Company, 141 F.3d 1038, 1941 (11th Cir, 1998). Mr. Radican's statement is a concession that he failed to meet his burden.[1]

Finally, plaintiff argues that RSL has waived its right to disclaim coverage because it received premiums by plaintiff. Those premium payments were received in 1996. Plaintiff's claim was not submitted, however, until the following year. Even though the employer remitted premium payments to RSL on behalf of Mr. Radican, this does not make him eligible for coverage. The mere receipt of premiums by RSL cannot create coverage where it does not exist. See Sippel v. Reliance Standard Life Insurance Company, 128

---

[1] Moreover, defendant disputes that an employee who works in a capacity similar to plaintiff can not establish eligibility for benefits. Either plaintiff, his employer or his co-workers could have identified specific projects that Mr. Radican performed along with dates that he was observed working full-time. They failed to do so, however. Affidavits from clients who were visited could have been provided or more detailed expense reports from his travel. The blame for the lack of this evidence must fall on Mr. Radican.

0568062.01

F.3d 1261 (8th Cir. 1997).

While RSL was responsible for the claim administration, the employer was responsible for enrollment and making sure that those who enrolled were eligible. See plaintiff's Exhibit "A" at page 3.0. Just above that provision it states that no agent is allowed to alter the terms of the policy. Therefore, the actions of the employer cannot waive the rights of RSL. Plaintiff also claims that RSL never refunded premiums. No premiums were ever paid by plaintiff! See plaintiff's Exhibit "A" at page 1.1. All premiums were paid by the employer and any alleged refund would go to the employer. Plaintiff has presented no evidence that a refund was ever requested by the employer.

In his first summary judgment motion, plaintiff cited to the court's decision in <u>Glass v. United of Omaha Life Ins. Co.</u>, 33 F.3d 1341 (11th Cir. 1994), in support of this claim. As pointed out by RSL, that case supports RSL's position. In <u>Glass</u>, the decedent was enrolled by his employer in a group policy which had as a requirement for coverage working 30 hours per week. The employer included the employee's name on the list of eligible employees that was submitted to the insurer even though he did not meet the eligibility requirements. The court held that the insurer's receipt of premiums did not constitute a waiver because there was "insufficient evidence either of intentional relinquishment of a known right or of any unjust benefit circumstance." <u>Glass</u>, 33 F.3d at 1348. Those same facts are present in this case. RSL had no way of knowing that plaintiff was ineligible until the claim was submitted nor has there been a knowing or intentional relinquishment of any right by RSL.

0568062.01

## CONCLUSION

For the reasons stated above, plaintiff's summary judgment motion must be denied. Contrary to plaintiff's argument, the subject plan grants to RSL the discretionary authority to determine eligibility for benefits. To be eligible for benefits under this plan, an individual must be a full-time employee of the policyholder, working a minimum of 40 hours per week. Plaintiff failed to provide RSL with proof that he met this requirement. Therefore, RSL's decision to deny the claim should be affirmed by this court and summary judgment should be entered by this court in favor of RSL.

Respectfully submitted,

RAWLE & HENDERSON
Joshua Bachrach, Esquire (*pro hac vice*)
Co-counsel for RSL
The Widener Building, 16th Floor
One South Penn Square
1339 Chestnut Street
Philadelphia, PA 19107
(215) 575-4200

ALLEY, MAASS, ROGERS & LINDSAY, P.A.
Co-counsel for RSL
P.O. Box 431
321 Royal Poinciana Plaza, South
Palm Beach, FL 33480-0431
(561) 659-1770/ (561) 833-2261 Fax

By: _/s/ Gene D. Lipscher_
GENE D. LIPSCHER
Florida Bar No. 904228:

0568062.01

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by via Fax and First Class U.S. Mail, postage prepaid, to Lawrence D. Bache, Esq. and Roy L. Taylor, Esquire, at Fountains Executive Center, 9000 West Sheridan Street, Suite 174, Pembroke Pines, FL 33024, this 3rd day of October, 2001.

        ALLEY, MAASS, ROGERS & LINDSAY, P.A.
        Attorneys for RSL
        P.O. Box 431
        321 Royal Poinciana Plaza, South
        Palm Beach, FL 33480-0431
        (561) 659-1770/ (561) 833-2261 Fax

        By: _____
        GENE D. LIPSCHER
        Florida Bar No. 904228

0568062.01