UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
6024
Case No. 00-624-CIV-ZLOCH-Seltzer

JAMES E. RADICAN                    )
                                    )
        Plaintiff,                  )
                                    )
vs.                                 )
                                    )
RELIANCE STANDARD LIFE              )
INSURANCE COMPANY, a Foreign,       )
corporation,                        )
                                    )
        Defendants.                 )
_____    )

NIGHT BOX
FILED

OCT 17 2001

CLARENCE MADD X
CLERK, USDC/SDF/FTL

## PLAINTIFF'S RESPONSE TO DEFENDANT'S RENEWED CROSS MOTION FOR SUMMARY JUDG-MENT AND SUPPORTING MEMORANDUM OF LAW

COMES NOW Plaintiff, JAMES E. RADICAN, by and through his undersigned counsel and, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 7.5, files this Response to Defendant's Renewed Cross Motion for Summary Judgment and states:

### RE: DEFENDANT'S "COUNTER STATEMENT OF MATERIAL FACTS"

In its "Counter Statement of Material Facts" in its (Renewed) Cross Motion for Summary Judgment, RSL has made statements which plaintiff disputes because they are either false, incomplete, misleading, or not statements of fact. These disputed statements in the paragraphs as numbered by RSL are discussed below.

1

**RSL's ¶ 5:** On a claim form submitted by plaintiff to RSL, he stated that on the last day that he worked before the alleged onset of disability he was working part-time and "recovering from surgery."

RADICAN did not state on the claim form that he was "working" part-time. The actual questions and answers from the claim form cited by RSL in its denial letter dated November 1, 1999 (Exhibit "D" to plaintiff's renewed motion for summary judgment (All exhibits herein referenced are attached to Plaintiff's Renewed Motion for Summary Judgment and shall hereafter be referred to as exhibit "")) are as follows:

> Before you stopped working, did your condition require you to change your job or the way you did your job?
>
> His answer:
> Yes
> Date you were first unable to work on a full-time basis
>
> His answer:
> 1/1/97
> Next he was asked:
> Last day you worked before the disability:
>
> His answer:
> 12/31/96
> Finally, he was asked:
> Did you work a full day:
>
> His answer:
> No - Part time - recovering from surgery

Radican's statement on the claim form is that he worked part-time on a specific day, December 31, 1996. RSL also fails to mention that in response to the question above as to the date he was <u>first</u> unable to work on a full-time basis, Radican's response is January 1, 1997.

**RSL's ¶ 6:** During two telephone conversations with James Wilson, Jr., of RSL, plaintiff stated that he had worked part-time for approximately one year

before the alleged onset of disability. See affidavit of James Wilson, Jr., a copy of which is attached as exhibit "A", plaintiff's exhibit "D" at page 3.[1]

The determination as to whether RSL properly denied RADICAN's claim for benefits is to be determined from a review of all the information contained in the administrative record. Notwithstanding the foregoing, RSL fails to state that RADICAN provided RSL with two sworn affidavits, one prior to and one after remand, in which he stated that he never made the alleged statements to the RSL employee, as discussed below.

In his denial letter dated August 3, 1998 (exhibit "C") Richard Walsh of RSL stated:

> He (Mr. Radican) informed us that he worked part time for about one year but was told that he should apply for disability because the company could no longer accommodate him on a part-time schedule.

Responding to this statement in his January 25, 1999 sworn affidavit RADICAN stated (composite exhibit "L"):

> This is an inaccurate statement. Perhaps I was misunderstood. What I attempted to convey was the truth, i.e., the only time in 1996 in which I did not work full-time was during those weeks when I was receiving medical treatment as referred to above.

In the denial letter dated August 3, 1998 Mr. Walsh further stated:

> In fact, on at least two occasions your client (Mr. Radican) informed us via telephone that he worked part time throughout 1996.

In his sworn affidavit dated January 25, 1999 RADICAN further stated (Composite exhibit "L"):

---

[1] Plaintiff's exhibit "D" is not Mr. Wilson's affidavit (Mr. Wilson's affidavit is exhibit "P" to plaintiff's renewed motion for summary judgment).

The reference to "throughout" can be misleading and perhaps there has been some confusion. What I attempted to convey is the truth, i.e., that I worked part time in 1996 but only for those weeks (less than 12) when I received physical therapy and/or pain treatment.

RSL makes reference to the affidavit of RSL employee James A. Wilson, Jr. (exhibit "P") in which Mr. Wilson stated in relevant part:

> 3.    I spoke directly with Mr. Radican on the telephone on two occasion during the investigation of his claim for benefits
>
> 4.    During both telephone conversations Mr. Radican <u>told me that he worked part-time for approximately one year</u> before he was told by the employer, Tarmac, that they could not accommodate his part-time schedule after December 31, 1996. (emphasis added)
>
> 5.    At no time during my telephone conversation with Mr. Radican did he ever state that he worked full-time at any time during 1996.

Responding to Mr. Wilson's affidavit testimony RADICAN provided RSL with his affidavit dated April 17, 2000 (exhibit "F") in which he stated:

> I never stated by phone or otherwise to any RELIANCE employee or anyone else that I <u>only</u> worked part time in 1996 and I informed RELIANCE of this. I informed RELIANCE that perhaps I was misunderstood. What I attempted to convey to the RELIANCE employee with whom I spoke was the truth, i.e., that I worked part time in 1996 but only for those weeks (less than 12) when I received physical therapy and/or pain treatment.

It must also be noted that there is no evidence that Mr. Wilson (or anyone else from RSL) ever asked RADICAN whether he worked full-time in 1996,[2] and the purported

---

[2]    RADICAN had been employed by Tarmac for more than 20 years in 1996. RADICAN never disputed that he worked "part time" for some weeks in 1996 and the statement he is alleged to have made that "he worked part-time for approximately one year," even if accurate, is consistent with the fact that he worked part-time for some weeks during that one year period only, as opposed to the other years of his employment.

statements attributed to RADICAN were alleged to have been made to an employee of RSL

whose interest would be to deny benefits.

> **RSL's ¶ 7:** During its investigation of the claim, RSL received a letter dated February 4, 1998 from Michael Unger who stated that the employer "allowed [plaintiff] to work on a part-time basis, and continued to work on a part-time basis for over one year while receiving physical therapy and pain treatments." See plaintiff's Exhibit "C".[3]

> **RSL's ¶ 8:** Mr. Unger's letter further states that "Tarmac's policy requires employees to work on a full-time basis. Jim [plaintiff] was incapable of performing his duties on this basis and was required to file for short-term disability ..." See plaintiff's motion for summary judgment, Exhibit "C". (See plaintiff's exhibit "C"). (See footnote #3).

> **RSL's ¶ 9:** After the claim was denied, Mr. Unger submitted an affidavit in which he attempted to "correct" the statements in this earlier letter. See plaintiff's exhibit "C". (See footnote #3).

In the administrative process RADICAN provided RSL with a sworn affidavit of

Michael Unger dated January 18, 1999 (composite exhibit "L") in which Unger clarified and

explained statements he made in his February 4, 1998 letter stating in relevant part:

> Attached hereto is my letter to Mr. James Wilson, Reliance Standard Life Insurance Co., dated February 4, 1998.

> My letter dated February 4, 1998 contains the statement:

>> Mr Goudie allowed Jim to work on a part-time basis, and continued to work on a part-time basis for over one year while receiving physical therapy and pain treatments.

> The above statement does not state, nor did I mean to infer that JAMES RADICAN worked only part-time in 1996. I was attempting to convey that

---

[3] Plaintiff's exhibit "C" is RSL's denial letter dated August 3, 1988. Mr. Unger's letter of February 4, 1998 and his affidavit January 19, 1999 are contained in composite exhibit "L" to plaintiff's Renewed Motion for Summary Judgment.

> JAMES E. RADICAN worked part-time during the weeks when he received physical therapy and/or pain treatment.

RSL also fails to cite Unger's complete statement in his February 4, 1998 letter, ignoring that in his sworn affidavit dated January 18, 1999 (composite exhibit "L") Mr. Unger states:

> My letter dated February 4, 1998 contains the statement:
>
>> Jim was incapable of performing his duties on this (a full-time) basis and was required to file for short term disability on January 1, 1996.
>
> The reference to January 1, 1996 was an inadvertent error. The date should have been January 1, 1997.

Mr. Unger did not "attempt" to "correct" the statements in his letter as alleged by RSL. He <u>explained</u> what his statements conveyed and corrected an inadvertent error.

> **RSL's ¶ 10:** During its investigation of plaintiff's claim, RSL received a letter dated February 26, 1998 from Edward B. Pittman, Vice President of Human Resources for Tarmac, in which he states that Mr. Radican was "paid full salary and enjoyed full benefits" but "that he worked partial days in 1996." See plaintiff's exhibit "C".[4]

In the context in which the above quotation is placed, it is misleading in that RSL suggests that the statement "he worked partial days in 1996" means that throughout all of 1996 he at no time worked full-time. It is clear that Mr. Pittman was saying in his letter (exhibit "M") that there were some days during 1996 in which Radican worked part-time. Mr. Pittman's actual statement is as follows:

> I am in receipt of your letter of February 20, 1998, to Mr. Radican, informing him of an unfavorable determination of his Long Term Disability Claim. You (RELIANCE) have stated that Mr. Radican was working "part-time" when the policy became effective, had not returned to "full time active work" prior to

---

[4]    Exhibit "C" is RSL's denial letter dated August 3, 1998.

his last day worked and therefore did not satisfy the definition of a full-time employee under the terms of the policy.

Jim Radican was a full-time salaried exempt employee of this company from his date of employment in 1965 until his last day of active work on December 31, 1996. At no time prior to the commencement of his short term disability on January 1, 1997 was he ever on part-time status; he was at all times paid full salary and enjoyed full benefits, including long term disability coverage, for which he paid. The fact that he worked partial days in 1996 following his return to work from surgery should in no way be construed as "part-time" status. Had Mr. Radican been classified a part-time employee, he would have been ineligible for participation in our long term disability benefit at all.

In paragraphs 11, 12, 13, and 14 respectively RSL states:

**RSL's ¶ 11:** In a letter dated January 1, 1996, plaintiff's treating physician, Manual Porth, M.D. states that "Mr. Radican has been advised to remain out of work for the next 6 months for medical reasons." The doctor hoped that plaintiff could return to work by June, 1996. See plaintiff's motion for summary judgment, Exhibit "D" at page 6.[5]

**RSL's ¶12:** On March 22, 1996, Dr. Porth states in his records that plaintiff's "quality of life has not significantly improved. He is still unable to return to his job and is aware of his back on a continual basis." See plaintiff's motion for summary judgment, Exhibit "D" at page 6. (See footnote #5).

**RSL's ¶ 13:** On September 16, 1996, Dr. Porth's medical records state that "the patient continues to be symptomatic and is unable to return to work." See plaintiff's motion for summary judgment, Exhibit "D" at page 7. (See footnote #5).

**RSL's ¶ 14:** In a letter dated September 16, 1996, Dr. Porth states that following the surgery, plaintiff had "essentially no improvement for severe degenerative disease and spinal stenosis. He has had an attempt at multiple epidural blocks and physical therapy with no improvement." The doctor further states that "[a]t this point the patient is found totally disabled with respect to employment and is advised to remain out of work until further notice." See plaintiff's motion for summary judgment, Exhibit "D" at page 7. (See footnote #5).

---

[5] Exhibit "D" is RSL's final denial letter and not Dr. Porth's medical records.

RSL fails to mention that in the administrative proceedings RADICAN provided RSL

with the sworn affidavit of Manuel Porth, M.D., dated June 28, 2000 (exhibit "O") in which

he clarified statements in the medical records stating in relevant part:

> 2.    That I compiled and maintained medical records in connection with treatment of James Radican and that I provided excerpts of those records and letters with respect thereto to Reliance Standard Life Insurance Company at their request.
>
> 3.    That I stated therein that during certain periods of 1996 I advised James Radican not to work and I also stated that he was unable to return to his job.
>
> 4.    That I naturally assumed Mr. Radican was following my advice that he should not work. I had no personal knowledge when I prepared the referenced reports and letters as to whether Mr. Radican had been following advice and/or was in fact not working.

Further, RSL fails to mention that in his sworn affidavit dated April 17, 2000 (exhibit "F")

that RADICAN explained:

> Notwithstanding having back pain and associated problems throughout 1996 and having been advised by Dr. Manuel Porth that I should refrain from working for the first 6 months in 1996 I did not follow his advice and the only weeks I did not work a minimum of 40 hours per week in 1996 were those weeks in which I received physical therapy and/or pain treatment and which total not more than 12 weeks.[6]

RSL was provided with uncontroverted evidence that RADICAN did not act in accordance

with the advice of Dr. Porth but continued to work throughout 1996 except for those days

when he received physical therapy and/or pain treatment.  See affidavits of RADICAN,

Thomas Mendez, Craig Leonard, Marcel Aragon, Hope E. Fischer, and Manuel Porth.

---

[6]    RADICAN  never disputed that he worked  less than 40 hours for some  weeks during 1996 (12), and pointed out to RSL that this is what gave rise to the references to "part-time" upon which RSL claims to have based its denial (exhibits "F" through "O").

submitted in the administrative process (exhibits "F" "J" and "O"). Further, Dr. Porth did not state that RADICAN did not work full-time during the entirety of 1996.

> **RSL's ¶ 17:** This claim was remanded by the court to RSL so that additional evidence could be reviewed that was not provided to RSL when it originally decided the claim.

As a matter of clarification, RADICAN alleged in a Motion to Remand that RSL concealed evidence upon which it based its denial until it made a final denial and closed the administrative case in violation of the obligation under ERISA to maintain a fair and reasonable claims procedure. See 29 C.F.R. § 503-(1)-(f). RADICAN's Motion to Remand was granted.

> **RSL's ¶ 19:** None of the "new" information provided by plaintiff alters the correctness of the decision to deny benefits. The "new" information was contradictory, not based on personal knowledge and generally unreliable.

These statements are disputed and are conclusions of law which do not belong in a statement of undisputed material facts.

> **RSL's ¶ 20:** The decision to deny the claim should be affirmed by the court.

This is a request for the relief by RSL and does belong in the statement of undisputed material facts.

## FALSE STATEMENTS OF FACT
## CONTAINED IN RSL's ARGUMENT

In addition to the misstatements in RSL's "Counter Statement of Material Facts" discussed above, in an attempt to support the reasonableness of its denial, in the "Argument and Legal Authority" section of its cross motion, RSL makes statements of fact which are false, including but not limited to those addressed below.

1.    On Page 11 RSL states: "In his affidavit, Mr. Unger stated that plaintiff worked only part-time in 1996." (underline added)

No such statement is made by Mr. Unger in his affidavit (composite exhibit "L" to plaintiff's Renewed Motion for Summary Judgment). Mr. Unger stated the opposite pointing out in his affidavit that he did "not state (in his letter), nor did 1 (he) mean to infer that JAMES RADICAN worked only part-time in 1996."

2.    On page 15 RSL states: "Earlier, Ms. Fischer told RSL that plaintiff did not work full-time at any time in 1996." (underline added).

Ms. Fischer never made such a statement. There is no evidence in the administrative record to support this allegation, and this allegation was never made in RSL's denial letters.

3.    On page 13 and 14 RSL states: "Plaintiff offers no explanation for this change in his affidavit other than the fact that there would be no coverage based on his earlier statement."

This is a reference to RADICAN's changing a statement in his first affidavit that he "performed ... the material duties pertaining to my (his) job... on a full-time basis, i.e., a minimum of 37.5 hours during his regular work week, ..." to a statement in his second affidavit to "a minimum of 40 hours during his regular work week."

RADICAN provided RSL with an explanation for this change in his initial Motion for Summary Judgment, reiterating what RSL has previously acknowledged, that his reference to a minimum of 37.5 hours per week in his first affidavit rather than to 40 was occasioned solely by his erroneous belief that a policy he had obtained from his employer referencing

10

a minimum of 37.5 hours was controlling.[7]  In its denial letter dated November 1, 1999

(exhibit "D") RSL informed   RADICAN that the change was irrelevant stating:

> In your letter of appeal dated January 26, 1999  you stated that the applicable
> plan document states the definition of Full-time work as being 37.5 hours as
> opposed to 40 hours per week.  The policy, which RSL considers to be the
> controlling document, (a copy of which is enclosed for your review) states that
> the definition of Full-time is 40 hours per week.  Therefore we disagree with
> your assertion that Full-time is defined as 37.5 hours per week.  While we
> disagree with your assessment, however, it is irrelevant for purposes of our
> review as the evidence in our claim file does not suggest that your client was
> working even the lower  37.5 hours per week at any point during calendar year
> 1996 prior to his cessation of work on December 31, 1996.

In all events, there is not contradiction between the affidavits as an employee working a

minimum of 40 hours per week would also have worked a minimum of 37.5 hours.

4.   On page 14 RSL states: "In the earlier denial letters RSL advised plaintiff that these
     co-worker affidavits were insufficient because they did not state where or when the
     co-workers observed plaintiff working."

     No such advisement was made by RSL  in "the earlier denial letters."

5.   On page 16 RSL states: "On page 17 of his brief, plaintiff states that 'there was no
     way for plaintiff to establish his eligibility for benefits, because he was a salaried and
     not an hourly employee.' "

     This is not a statement by RADICAN, but a statement made by RSL   in its denial

letter dated November 1, 1999 (exhibit "D").

6.   On page 17 RSL states: "No premiums were ever paid by plaintiff."

---

[7]  The first affidavits of co-employees Mendez and Leonard also referenced the minimum
of 37.5 hours, their second affidavits a minimum of 40 hours.

In his affidavit dated February 19, 2000 submitted to RSL (exhibit "F"), RADICAN stated in paragraph 7: "Throughout 1996 I paid premiums for my coverage as a full-time employee of Tarmac America, Inc."

## ARGUMENT AMD MEMORANDUM OF LAW

### STANDARD OF REVIEW

#### THE HEIGHTENED ARBITRARY AND
#### CAPRICIOUS STANDARD OF REVIEW IS APPLICABLE

RSL is wrong in contending it is entitled to the "utmost deference" in this judicial review of its denial of benefits. RSL is an insurance company paying out to beneficiaries from its own assets. A "strong conflict of interest [exists] when the fiduciary making the discretionary decision is also the insurance company responsible for paying the claims . . ." *Brown*, supra at 1562, also see *Anderson v. Blue Cross/Blue Shield of Alabama*, 907 F.2d 1072 (11th Cir. 1990). The level of deference is significantly diminished where a conflict of interest exits. Under such circumstances, the proper deference "may be slight, even zero." *Brown v. Blue Cross and Blue Shield of Alabama, Inc.* 898 F.2d 1556, 1559 (11th Cir. 1990), cert. denied, 498 U.S. 1040, 111 S.C. 712, 112 LED.2d 701 (1991); *Godfrey v. BellSouth Telecommunication,* 898 F.2d 1556, 1559 (11th Cir. 1990). A highly deferential standard of review is therefore inappropriate in this case.

RSL's reliance upon *Horton v. Reliance Standard Life Ins. Co.* 141 F.3d 1038 (11th Cir. 1998), which provides a plaintiff suing under ERISA bears the burden of proving his entitlement to benefits is misplaced. *Horton,* supra, is inapplicable. In *Horton,* supra, the

court was not conducting a review confined to the administrative record under the heightened arbitrary and capricious (abuse of discretion) standard to determine whether benefits were properly denied, but was conducting a de novo review.

## RADICAN WAS AN ELIGIBLE INSURED
## UNDER THE PLAN AS A FULL-TIME EMPLOYEE

The "Eligibility Requirements" for benefits under the RELIANCE group disability policy are set forth on page 5.0 (exhibit "A") as follows:

> ELIGIBILITY REQUIREMENTS: A person is eligible for insurance under this policy if he/she:
> (1) is a member of an Eligible Class, as shown on the schedule of Benefits page; and
> (2) has completed the Waiting Period, as shown on the Schedule of Benefits page;

The "Schedule of Benefits" on page 1.0 provides:

> ELIGIBLE CLASSES: Each active, Full-time employee except any person employed on a temporary or seasonal basis, according to the following classifications:
>
> CLASS A: employee earning $59,000.00 or more per year who:
> (1) is engaged in a non-hazardous occupation; and
> (2) functions primarily if an office environment.
>
> CLASS B: salaried employee earning more than $30,000.00 per year but less than $59,000.00.

In 1996 RADICAN met the "ELIGIBILITY REQUIREMENTS" set forth above because he had completed the Waiting Period and he met the "ELIGIBLE CLASSES" provision as a "Class B" employee as shown on the Schedule of Benefits page (a salaried employee earning more than $30,000. per year but less than $59,000.). RSL based its denial

of RADICAN's claim for benefits claiming RADICAN was never an eligible plan participant under the <u>definition section of the policy</u>.

"[A]ctive employee" is not defined in the policy. The following definitions are found in the policy (plaintiff's exhibit "A" at page 2.0):

> "Actively at work" and "Active Work" mean actually performing on a Full-time basis the material duties pertaining to his/her job in the place where and the manner in which the job is normally performed. This includes approved time off such as vacation, jury duty and funeral leave, but does not include time off as a result of an injury or sickness
>
> "Full-time" means working for you for a minimum of 40 hours during a persons's regular work week

The definition of full time in the policy is descriptive, not, as RSL contends, requisitive. It sets out what in fact is simply the job specification as to hours expected to be worked by a full-time employee. RADICAN was a full-time worker. The normal average working hours of a person employed full-time is 40 hours per week, and the status of such a person as a full-time worker does not change to that of a part-time worker because that person fails to work a 40 hour week during any particular week or weeks. Classification is a matter of intention and agreement, not performance. Tarmac America Inc. had no part-time or seasonal employees during 1996. (Plaintiff's exhibit "N"). The term full-time in the context of employment ordinarily, historically, and conventionally connotes employment in which the normal average working hours are 40 per week. In construction, any departure from this interpretation, unless explicitly and unambiguously spelled out in the writing being construed, would necessarily constitute an abuse of discretion.

During 1996 RADICAN was among that group of Tarmac employees who, during their regular work week, normally worked a minimum of 40 hours. He was therefore a full-time employee within the policy's definition of that category or class of worker.

There is no requirement in the definition that a "Full-time" employee **be actively at work for a minium of 40 hours** during his or her regular work week, which is the interpretation for which RSL argues. Under such a construction not only would the ordinary understanding of full-time be violated, but, more to the point, **no disabled salaried Tarmac employee would ever be held entitled to benefits as a full time worker under the plan since Tarmac maintains no records respecting the hours worked by its salaried employees.**[8] The disability benefits vouchsafed to qualifying Tarmac employees under the plan would therefore be mere 'paper' benefits.

It is respectfully submitted that RADICAN's interpretation of the relevant plan terms is correct. If the interpretation of "full-time" contended for by RSL is to be at all entertained, then such consideration would necessarily mean that ambiguity exists. If the court gives credence to RSL's different interpretation of the relevant plan terms, the burden is on RSL

---

[8] In RSL's Final denial letter (Exhibit "D" page 7-8 to plaintiff's motion for summary judgment), RSL concedes this as follows: "Tarmac has made it clear that they did not keep attendance records . . . (and) attendance records would appear to be the only documents which could perfect the claim."

to demonstrate that its interpretation is not motivated by self-interest.[9]  *Lee v. Blue Cross/Blue Shield of Alabama.*  10 Fd.3d 1547 (11th Cir. 1994).

## ASSUMING ARGUENDO THAT IN ORDER TO BECOME ELIGIBLE FOR BENEFITS AN EMPLOYEE WAS REQUIRED TO WORK A MINIMUM OF 40 HOURS DURING ANY WEEK IN 1996, RADICAN MET THIS CRITERIA AS EVIDENCED BY DOCUMENTATION IN THE ADMINISTRATIVE RECORD

RADICAN provided RSL with substantial and uncontroverted evidence demonstrating that he worked 40 hours per week during numerous weeks in 1996. More specifically, RSL received five affidavits in which each affiant stated under oath that RADICAN worked a minimum of 40 hours per week during numerous weeks in 1996.  These affidavits are:

1.    RADICAN's affidavit dated April   17, 2001 (exhibit "F")

2.    affidavit of RADICAN's co-worker Marcel Aragon dated February 19, 2001 (exhibit "G")

3.    affidavit of RADICAN's co-worker Thomas Mendez dated April 25, 2000 (Exhibit "H")

4.    affidavit of RADICAN's co-worker Craig Leonard dated April 26, 2000 (exhibit "I")

5.    affidavit of Tarmac's benefits administrator, Hope E. Fischer, dated March 2, 2001 (exhibit "J").

In its cross motion, apparently cognizant of a lack of evidence in contravention of the affidavit testimony referenced above, RSL falsely alleges Mr. Unger stated in his affidavit

---

[9] The general statement of RSL employee James A. Wilson, Jr. in his affidavit that RSL's denial was not motivated by self-interest because it allows RSL to maintain premiums at an affordable level, is conclusory, self-serving, and unsupported by any evidence.

16

that RADICAN worked <u>only</u> part-time in 1996, and that Ms. Fischer told RSL <u>that plaintiff</u> <u>did not work full time at any time in 1996</u>. (See page 10 of this Response.)

In its cross motion, RSL simply dismisses the testimony of the five affiants stating their affidavits "are of little value . . ." RADICAN was a salaried employee who did not punch a time clock and his employer did not keep time sheets or attendance records for salaried employees in 1996. Because RSL maintained its position after the first appeal claiming that RADICAN failed to worked 40 hours per week during any week in 1996, the only means for him to establish the compliment of his working hours was via sworn testimony. (Plaintiff's exhibits "F" through "J").

RSL further states in its cross motion "the affidavits fail to explain what, if any, job duties were observed, where plaintiff was working and any specific dates when this took place . . ." It is respectfully submitted that such information was not necessary, particularly since there was no evidence, sworn or otherwise, contradicting the affiants' statements respecting hours worked. Further, RSL's attempt to invalidate the affidavits by alleging for the <u>first time</u> that additional details were required from the affiants, is a specious attempt to justify its arbitrary and capricious denial and is violative of 29 C.F.R. § 2560-503-1(f)(3).[10]

_____

[10] 29 C.F.R.§2560-503-1(f)(3), requires a written notice of denial to include "[A] description of any additional material or information necessary for the claimant to perfect the claims and an explanation of why such material or information is necessary." Contrary to RSL's statement on page 14 of its cross motion, none of the earlier denial letters provided RADICAN with a description of additional material or information required and/or why such information was necessary. RSL's statement in its final denial letter dated July 23, 2001 that it had "never been advised that Ms. Aragaon or any other employee of Tarmac accompanied Mr. Radican on these sales calls nor does she (sic) so advise in her affidavit" does not comply with 29 C.F.R. 503-1-(f)(3) and was not provided until RSL closed the administrative record.

If RSL wanted additional information from the affiants respecting "job duties observed, where plaintiff was working and any specific dates when this work took place . . ." it could and should have contacted RADICAN, his co-workers or Ms. Fischer to make whatever inquiries it deemed important. A self-interested fiduciary has a duty to investigate. Encompassed within the Plan administrator's (trustees) fiduciary duty to "discharge [its] duties with respect to the plan solely in the interest of the participants and beneficiaries" of the Plan, is a duty to investigate a claim in good faith. See *Brown v. Blue Cross & Blue Shield*, 898 F.2d 1556, 1566 n. 11 (11th Cir.1990), quoting *Colket v. St. Louis Union Trust Co.*, 52 F.2d 390, 395-96 (8th Cir.1931); Also see *Shannon v. Jack Eckerd*, 113 F.3d 208 (11th Cir. 1997), in which the administrator's failure to obtain relevant information in its investigation of the claim, coupled with its reliance on bald assertions from consultants constituted an arbitrary and capricious denial of benefits. Also see *Powers v. Thermadgne Holdings Corporation*, 2001 U.S. Dist. Lexis 5676 (D. Kansas, Feb. 6. 2001).

RSL also states in its cross motion that "[t]he affidavits merely contain conclusory statements which are contradictory to earlier ones made by these individuals and which are made without any factual support." (Cross motion, pages 12 and 13). There is no statement by the three affiants (RADICAN, Mendez, and Leonard) which is "contradictory to earlier ones made by these individuals . . ." As understood by RSL in the administrative proceedings, the reference to a minimum of 37.5 hours per week rather than to a minimum of 40 hours occurred because RADICAN originally and erroneously believed a different policy was controlling. Accordingly, second affidavits were submitted for the two co-

workers and for RADICAN which refer to a minimum of 40 hours.[11] In addition to these three affidavits, co-employee Marcel Aragon and Hope E. Fischer, Tarmac's benefits administrator, also state in their respective affidavits that RADICAN worked a minimum of 40 hours per week during numerous weeks in 1996. (Exhibits "G" and "J"). In all events, there is no contradiction between the first and second affidavits of the three respective individuals because an employee who worked a minimum of 40 hours per week would also have worked a minimum of 37.5 hours per week.

RSL attempts to justify its denial upon the following:

**(1)** Statements RSL employee alleges RADICAN made to him in two phone conversations;

**(2)** Statements made by RADICAN in his application for benefits;

**(3)** Statements made by B. Edward Pittman, Vice President of Human Resources for Tarmac, in his February 26, 1998 letter;

**(4)** Statements made by Michael Unger, General Manager of Pennsuco Cement and Aggregates, a Tarmac America Inc. company;

**(5)** Medical records of Dr. Porth, RADICAN's treating physician; and

**(6)** Statements made by Hope B. Fischer, Tarmac's Benefits Administrator in 1996.

As explained in Plaintiff's Renewed Motion for Summary Judgment, and briefly below, **none of this evidence when viewed separately or in totality provided a reasonable**

---

[11] RADICAN's second affidavit also contains additional information not included in his first affidavit.

**basis for rejecting the evidence submitted by RADICAN and denying his claim for**

**benefits**.

Nowhere in the evidence cited above upon which RSL claims to have relied is there

a statement, sworn or otherwise, that RADICAN failed to work 40 hours per week during

any week in 1996, or which otherwise contradicts the evidence submitted by RADICAN.

The false statements made by RSL in its cross motion that "In his affidavit, Mr. Unger stated

that plaintiff worked <u>only</u> part-time in 1996" and that "Earlier, Ms. Fischer told RSL <u>that</u>

<u>plaintiff did not work full time at any time in 1996</u>" (underline added) are illustrative. (See

page 10 of this Response). RSL based its denial upon speculation from what it deemed to

be "the most plausible explanation" of RADICAN's work circumstances. (See exhibit "E",

final denial letter after remand, page 6). A denial by an ERISA fiduciary based upon

speculation, particularly where self-interest is involved is arbitrary and capricious.

More specifically, with respect to number (1) above, RSL states on page 9 that:

> [D]uring two telephone conversations with RSL, plaintiff stated that he
> worked part-time for approximately one year before he stopped working
> because his employer could no longer accommodate his part-time schedule.
> At not time did plaintiff state that he had ever returned to work full-time after
> surgery.

RADICAN never disputed that he worked part-time (less than 40 hours) for some weeks in

1996. In his affidavit dated April 17, 2000 (exhibit "F") he stated:

> I never stated by phone or otherwise to any RELIANCE employee or anyone
> else that I <u>only</u> worked part time in 1996 and I informed RELIANCE of this.
> I informed RELIANCE that perhaps I was misunderstood. What I attempted
> to convey to the RELIANCE employee with whom I spoke was the truth, i.e.,

that I worked part time in 1996 but only for those weeks (less than 12) when I received physical therapy and/or pain treatment.

Further, the purported statements attributed to RADICAN were allegedly made to an employee of RELIANCE whose interest would be to deny benefits. Mr. Wilson does not allege that RADICAN stated he worked only part time (less than 40 hours) for every week in 1996, a conclusion reached by conjecture. There is no evidence in the administrative record to indicate that during the course of the conversations, or at any other time, RADICAN was ever asked whether he worked "full-time" during 1996, or that Mr. Wilson explained to RADICAN how he was defining "full-time" as distinct from "part-time."

With respect to number (2) above, on page 9 RSL states that "on the initial claim form (application of benefits) plaintiff stated that on his last day of work he was working part-time and "recovering from surgery."

RADICAN did not state in his application that he only worked part-time throughout 1996. He stated that he was first unable to work on a "full-time basis" on January 1, 1997.[12] Further, his reference to working part-time recovering from surgery is in response to a question directed toward whether he worked a full day on December 31, 1996. Accordingly, any conclusion that he failed to work the hours of a "Full-time" employee during any week in 1996 was obviously wrong and was necessarily based upon speculation.

_____

[12] In the denial letter dated November 1, 1999, pg. 4, (exhibit "D") RELIANCE concedes "these answers (in the application) are not conclusive evidence that [RADICAN] . . . was working on a part-time basis throughout 1996 . . ." and in its final denial letter, page 6, plaintiff's exhibit "E", it admits it based its denial not upon any conclusive evidence, but upon what it deemed to be "the most plausible explanation" of his work circumstances.

With respect to no. (3) above, RSL states on page 9 that the statement of Mr. Pittman in his February 26, 1998 letter that plaintiff "worked partial days in 1996 following his return to work from surgery" . . . "supports RSL's position." The statement "he worked partial days in 1996" cannot reasonably be interpreted to mean that throughout all of 1996 he at no time worked full-time. It is clear that Mr. Pittman was saying in his letter (plaintiff's exhibit "M") that there were some days during 1996 in which Radican worked part-time. (Also see Mr. Pittman's affidavit, plaintiff's exhibit "N"). Mr. Pittman's actual statement is as follows:

> I am in receipt of your letter of February 20, 1998, to Mr. Radican, informing him of an unfavorable determination of his Long Term Disability Claim. You (RELIANCE) have stated that Mr. Radican was working "part-time" when the policy became effective, had not returned to "full time active work" prior to his last day worked and therefore did not satisfy the definition of a full-time employee under the terms of the policy.

> Jim Radican was a full-time salaried exempt employee of this company from his date of employment in 1965 until his last day of active work on December 31, 1996. At no time prior to the commencement of his short term disability on January 1, 1997 was he ever on part-time status; he was at all times paid full salary and enjoyed full benefits, including long term disability coverage, for which he paid. The fact that he worked partial days in 1996 following his return to work from surgery should in no way be construed as "part-time" status. Had Mr. Radican been classified a part-time employee, he would have been ineligible for participation in our long term disability benefit at all.

With respect to no. (4) above, RSL states on page 9:

> In the February 4, 1998 letter, Mr. Unger states that at the time plaintiff returned to work after surgery he was "allowed ... to work on a part-time basis and continued to work on a part-time basis for over one year while receiving physical therapy and pain treatment." See plaintiff's Exhibit "C." The letter further states plaintiff was "incapable of performing his duties on a full-time basis."

RADICAN provided RELIANCE with the <u>sworn</u> affidavit of Michael Unger dated January

18, 1999 (composite exhibit "L") in which Mr. Unger stated in pertinent part:

> My letter dated February 4, 1998 contains the statement:
>
>> Mr. Goudie allowed Jim to work on a part-time basis, and continued to work on a part-time basis for over one year while receiving physical therapy and pain treatments.
>
> The above statement does not state, nor did I mean to infer that JAMES RADICAN worked <u>only</u> part-time in 1996. I was attempting to convey that JAMES E. RADICAN worked part-time during the weeks when he received physical therapy and/or pain treatment.
>
> My letter dated February 4, 1998 contains the statement:
>
>> Jim was incapable of performing his duties on this (a full-time) basis and was required to file for short term disability on January 1, 1996.
>
> The reference to January 1, 1996 was an inadvertent error. The date should have been January 1, 1997.

With respect to number (5), RSL states "The medical records submitted to RSL also

did not support plaintiff's claim that he worked full-time at any point during 1996." Dr.

Porth did not state that RADICAN failed to work full-time in 1996. In his sworn affidavit

dated June 28, 2000 (exhibit "O") Dr. Porth clarified stating:

> 2.    That I compiled and maintained medical records in connection with treatment of James Radican and that I provided excerpts of those records and letters with respect thereto to Reliance Standard Life Insurance Company at their request.
>
> 3.    That I stated therein that during certain periods of 1996 I advised James Radican not to work and I also stated that he was unable to return to his job.
>
> 4.    That I naturally assumed Mr. Radican was following my advice that he should not work. I had no personal knowledge when I prepared the referenced

reports and letters as to whether Mr. Radican had been following advice and/or was in fact not working.

In addition, RADICAN explained in his sworn affidavit dated April 17, 2000 (exhibit "F") submitted to RELIANCE:

> Notwithstanding having back pain and associated problems throughout 1996 and having been advised by Dr. Manuel Porth that I should refrain from working for the first 6 months in 1996 I did not follow his advice and the only weeks I did not work a minimum of 40 hours per week in 1996 were those weeks in which I received physical therapy and/or pain treatment and which total not more than 12 weeks.[13]

RSL's attempt to support its denial by discrediting RADICAN for working more than 40 hours against the advice of his physician is without any evidentiary support and is disingenuous. There would be no complaint in a circumstance where the employees doing so relieved RSL of a contractual obligation to pay benefits.

With respect to number (6) above, RSL falsely states on page 15 that "Earlier, Ms. Fischer told RSL that plaintiff did not work full-time at any time in 1996." Ms. Fisher never stated that RADICAN failed to work "Full-time" during any week in 1996. (See page 10 herein). In addition, Hope E. Fischer stated in her sworn affidavit dated March 2, 2001 (exhibit "J") in pertinent part:

> 2. I have personal knowledge that Reliance Standard Life Insurance Company has denied James E. Radican's claim for disability benefits upon a finding that in 1996 James E. Radican did not perform the material duties pertaining to his job in the place and manner in which his job was normally

---

[13] RADICAN never disputed that he worked less than 40 hours for some weeks during 1996 (12), and pointed out to RELIANCE that this is what gave rise to the references to "part-time" upon which RELIANCE claims to have based its denial (exhibits "F" through "O").

performed on a "Full-time" basis, i.e., a minimum of 40 hours during his regular work week. In making its determination, I am also aware that Reliance Standard Life Insurance Company claims to have relied upon the following statement from my letter dated January 28, 1998:

> [o]ur files on Mr. Radican indicate that he had back surgery in October of 1995 and was out of work from that time until sometime after mid-year 1996 at the recommendation of his doctor, Manuel Porth. Sometime during the latter part of 1996, he reported to work, but we have no documentation in the file to substantiate the dates worked.

3.    My above-quoted statement should not to be construed or interpreted to support a conclusion that Mr. Radican did not work a minimum of 40 hours during his regular work week in 1996, and any reliance in this regard is unwarranted and misguided. My statement that Mr. Radican "was out of work from that time (October, 1995) until sometime after mid-year 1996," was made without personal knowledge, and I was simply paraphrasing what I had read in a written recommendation from Dr. Manuel Porth.

Further, the company did not require or maintain documents to substantiate the dates worked for any salaried employee including James E. Radican in 1996, and it was solely for this reason that I stated "we have no documentation in the file to substantiate the dates worked." The absence of such documentation does not support a conclusion that Mr. Radican or any other salaried employee did not work for Tarmac for 40 hours per week in 1996.

5.    I received a copy of a letter from Reliance Standard Life Insurance Company to James Radican dated April 6, 1998 in which his claim for disability benefits was denied on the basis that he was not eligible because he failed to work a minimum of 40 hours during his regular work week in 1996 and therefore was not a "Full-time" employee. This determination by Reliance Standard Life Insurance Company is wrong.

6.    I received copies of letters from attorney Marika McVey Ostendorf dated June 5, 1998, and from attorney Lawrence D. Bache dated January 26, 1999 sent to Reliance Standard Life Insurance Company on behalf of James E. Radican. I concur with the positions stated by counsel in those letters that James E. Radican was a "Full-Time" employee for Tarmac America, Inc. in 1996 due not only to his employment status, but also because he performed the material duties pertaining to his job for more than 40 hours per week during numerous weeks in 1996.

In its Cross Motion, RSL states on the 7th page that "[T]he claim was denied because RSL did not receive **adequate** evidence that plaintiff worked 40 hours per week at any time while the policy was in effect." (emphasis added).[14] **Proof that a claimant worked 40 hours per week during the currency of the policy is not a requirement for payment of benefits under the policy.**[15] While the policy provides that in order to be entitled to benefits a

_____

[14] RSL cites to *Horton v. Reliance Standard Life Ins. Co.* 141 F.3d 1038 (11th Cir. 1998) to support its wrongful contention that RADICAN failed to submit adequate proof to establish his claim. Such reliance is misplaced. *Horton* involved a de novo review.

[15] The provisions governing payment of benefits are set forth under PAYMENT OF CLAIMS on page 4.0 and INSURING CLAUSE on page 7.0 which provide as follows:

**PAYMENT OF CLAIMS:** When we receive written proof of Total Disability covered by this Policy, we will pay any benefits due. Benefits that provide for periodic payment will be paid for each period as we become liable.

We will pay benefits to the insured, if living, or else to his/her estate.

If the Insured has died and we have not paid all benefits due, we may pay up to $1,000.00 to any relative by blood or marriage, or to the executor or administrator of the Insured's estate. The payment will only be made to persons entitled to it. An expense incurred as a result of the Insured's last illness, death or burial will entitle a person to this payment. The payments will cease when a valid claim is made for the benefit. We will not be liable for any payment we have made in good faith.

Reliance Standard Life Insurance Company shall serve as the claims review fiduciary with respect to the insurance policy and the Plan. The claims review fiduciary has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits. Decisions by the claims review fiduciary shall be complete, final and binding on all parties.

**INSURING CLAUSE:** We will pay a Monthly Benefit if an Insured:
 (1) is Totally Disabled as a result of a Sickness or Injury covered by this Policy;
 (2) is under the regular care of a Physician;
 (3) has completed the Elimination Period; and
 (4) submits satisfactory proof of Total Disability to us.

claimant is <u>required to submit "satisfactory proof of Total Disability to" RSL</u> (Exhibit "A" pg. 7.0), <u>there is no requirement for a claimant to submit proof, satisfactory or adequate, of the hours he or she has **actually** worked</u>.  The adequacy or inadequacy of evidence as to the hours actually worked by a full-time employee is therefore irrelevant to the issue of his entitlement to benefits.

In its November 1, 1999 denial letter (exhibit "D"), RSL stated that "attendance records would appear to be the only documents which could perfect the claim" and since Tarmac (RADICAN's employer) ". . . made it clear they did not keep attendance records . . . there is [not] any documentation which could perfect . . . (RADICAN's) appeal . . ."  If RSL's position were correct, it could properly deny any salaried employee's claim for benefits even though, as occurred in this case, it received and retained monthly premiums for that employee.  Such conduct, particularly by an administrator with a self-interest in denying benefits, is violative of the ERISA mandates that require fiduciaries to discharge their duties with respect to a plan "solely in the interest of participants and beneficiaries" § 1104(a)(1).

**WHEREFORE**, Plaintiff, respectfully request this Honorable Court deny Reliance Standard Life Insurance  Company's cross motion for summary judgment and  grant plaintiff James E. Radican's Motion for Summary Judgment on the issue of liability finding James E. Radican is entitled to long term disability benefits.


**Respectfully submitted this 17th day of October, 2001.**

By: _____

LAWRENCE D. BACHE
Florida Bar No. 0557935
Law Office of Lawrence D. Bache
Attorney for Plaintiff
9000 West Sheridan Street, Suite 174
Pembroke Pines, Florida 33024
(954) 436-7376;  Fax (954) 436-2926

## Certificate of Service

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been sent

via U.S. mail this 17th day of October, 2001 to **Gene D. Lipscher**,  Esq., Alley, Maass,

Rogers, & Lindsay, P.A., Attorney for RSL, 321 Royal Poinciana Plaza South , P.O. Box 431

Palm Beach, FL 33480-0431 and to **Joshua Bachrach**, Esq., Rawle & Henderson, the

Widener Bldg, 16th Floor, One South Penn Square, 1339 Chestnut St., Philadelphia, PA

19107.

By: _____

LAWRENCE D. BACHE
Florida Bar No. 0557935
Law Office of Lawrence D. Bache
Attorney for Plaintiff
9000 West Sheridan Street, Suite 174
Pembroke Pines, Florida 33024
(954) 436-7376;  Fax (954) 436-2926

C:\MyFiles\Radican\aaRespone RenewMSJ 01A.wpd

28